STATE OF NEBRASKA, APPELLEE, v. EVERETT F. LEVISON, APPELLANT.

510 N.W.2d 495

Filed July 27, 1993.   No. A-92-985.

Steven Lefler for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

SIEVERS, Chief Judge.

Everett F. Levison appeals a district court's decision to grant a mistrial shortly after defense counsel made allegedly improper and prejudicial remarks during his opening statement. Levison contends that the prosecution did not establish the requisite "manifest necessity" to grant the mistrial over defendant's objection and that, therefore, any further prosecution is barred by double jeopardy.

## PROCEDURAL BACKGROUND

On October 31, 1991, Levison was charged with the unlawful possession of a controlled substance, heroin, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1992). At his November 7 arraignment in the district court for Douglas County, Levison pled not guilty. The State filed an amended information on September 22, 1992, which charged Levison with two counts of unlawful possession of a controlled substance, heroin and cocaine.

Levison's jury trial began October 1, 1992. After the jury was impaneled and sworn, opening arguments were made which were not recorded by the court reporter. However, a record was made by the court and counsel in chambers as a result of the prosecution's request for a mistrial. The prosecutor stated that "during [defense counsel's] opening statement, [counsel] indicated that Mr. Levison spent a night in jail and that the following morning . . . charges against him were dismissed." The prosecutor moved for mistrial based on these remarks by defense counsel, stating that they were irrelevant and "very prejudicial to the State."

Defense counsel did not dispute the prosecutor's summation of what defense counsel said, but argued that his comments regarding the dismissal of charges against Levison and Levison's subsequent rearrest were "particularly relevant." The court, however, informed counsel that he was "having great difficulty seeing how it could ever be relevant" and that, furthermore, it seemed the "remark was indeed highly prejudicial to the State."

Finding defense counsel's remarks irrelevant and prejudicial, the court then proceeded to consider the value of admonitions

and instructions to the jury. The court concluded:

> If something is prejudicial, I find it unlikely that my admonition or my written instruction is going to cure the problem. And I think here that once they've heard that the charge was — I forget the exact words, how you characterized it — but that it was dismissed, I think, is highly prejudicial to the State's position. And so for those reasons, I am going to grant the motion.

On October 5, 1992, Levison filed a motion to dismiss on the grounds that the mistrial was improper and that any further prosecution was barred by the double jeopardy protections of the U.S. and Nebraska Constitutions. Levison's motion was overruled on October 21, and he timely perfected this appeal.

## DISCUSSION

An overruling of a motion to dismiss in the nature of a plea in bar is a final order from which an appeal may be taken. See *State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991). Levison's appeal is therefore properly before this court.

Levison's contention that he should not be placed in jeopardy a second time for the same offense is grounded in the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and article I, § 12, of the Nebraska Constitution. The constitutional prohibition against double jeopardy protects " 'an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' " *State v. Bostwick*, 222 Neb. 631, 642, 385 N.W.2d 906, 914 (1986) (quoting *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)). However, double jeopardy protection " 'does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' " *State v. Bostwick*, 222 Neb. at 642, 385 N.W.2d at 914 (quoting *Wade v. Hunter*, 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949)).

Bearing in mind the protection afforded by the Double Jeopardy Clause, we must determine to what extent it protects criminal defendants who have objected to mistrials granted at the request of prosecutors.

Although jeopardy attaches when a jury is impaneled and sworn, the Double Jeopardy Clause bars retrial in criminal prosecutions only where jeopardy has attached and has terminated. *State v. Bostwick, supra*. Examples of events which trigger termination of jeopardy include (1) an acquittal by a judge or jury, (2) a directed verdict of acquittal for insufficient evidence, and (3) a conviction reversed as a matter of law for insufficient evidence. *Id*. "A declaration of mistrial, on the other hand, does not, in every case, result in termination of jeopardy." *Id*. at 643, 385 N.W.2d at 914.

The Nebraska Supreme Court has further stated, "Although a defendant has a 'valued right to have his trial completed by a particular tribunal,' such right 'must in some instance be subordinated to the public's interest in fair trials designed to end in just judgments.' " *Id*. (quoting *Wade v. Hunter, supra*).

There is no question that jeopardy attached in Levison's case, since a jury was impaneled and sworn. The issue here, as in *State v. Bostwick*, is whether jeopardy had terminated as a result of the mistrial, thus triggering the constitutional prohibition against double jeopardy.

*State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979), involved a mistrial which was granted as a result of possible juror bias. In that case, no juror responded when asked during voir dire if anyone knew the defendant. Trial commenced, and by the noon recess, a juror came forward stating he had not recognized the defendant by name, but after sitting through the morning evidence he realized that he and his wife were well acquainted with the defendant's family. The juror stated he did not think he could be a fair and impartial juror. The prosecution offered to stipulate to a trial by the remaining jurors, but defense counsel refused. The prosecution then moved for mistrial, which was granted without prejudice. The Nebraska Supreme Court stated:

> The early common law rule was that the discharge of an impaneled jury in a criminal case for any cause before the verdict would sustain a plea of former jeopardy and operate practically as a discharge of the prisoner. The modern rule permits a court to discharge a jury without having the effect of acquitting the defendant in any case

where the ends of justice would be otherwise defeated. A mistrial may be declared and a new trial granted where there is a manifest necessity to do so in order to serve the ends of public justice.

*Id*. at 44, 281 N.W.2d at 225 (citing *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)).

The granting of a mistrial which was requested by the prosecution over defendant's objection, therefore, does not terminate jeopardy when manifest necessity requires the mistrial in order to serve the ends of public justice, and therefore retrial may not be precluded on the grounds of double jeopardy in such instances.

In our review of this record to determine whether the district court was justified in granting the mistrial, we bear in mind the standard that a motion for mistrial is addressed to the discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986).

We turn now to *Arizona v. Washington*, the U.S. Supreme Court case cited in *State v. Clifford*, for further guidance on the issue of manifest necessity, since that case also involved a mistrial which resulted from defense counsel's improper opening statements. In *Arizona v. Washington*, the defendant was found guilty of murder. However, he was granted a new trial because the prosecutor had withheld exculpatory evidence from the defense. The Arizona Supreme Court, in an unpublished opinion, affirmed the order for new trial. During opening statements of the second trial, defense counsel told jurors that the case had been tried 4 years earlier; that the prosecutor had hidden evidence; and that because of the prosecutorial misconduct, the Arizona Supreme Court granted the new trial. The prosecutor moved for mistrial at the conclusion of defense counsel's opening statement.

The U.S. Supreme Court noted that "[t]he trial judge did not expressly find that there was 'manifest necessity' for a mistrial; nor did he expressly state that he had considered alternative solutions and concluded that none would be adequate." 434 U.S. at 501. The Arizona Supreme Court refused to review the ruling, and the defendant filed a writ of habeas corpus in the

federal court. The federal judge granted the writ because the record contained no specific finding of manifest necessity. The Ninth Circuit court agreed that the statement was improper, but affirmed the federal district court's judgment because there was no finding of manifest necessity or explicit consideration of alternatives to a mistrial. *Id.* The U.S. Supreme Court reversed the lower court's judgment, stating that the "Court of Appeals applied an inappropriate standard of review to mistrial rulings of this kind, and attached undue significance to the form of the ruling." 434 U.S. at 503.

In evaluating double jeopardy protections, the U.S. Supreme Court distinguished cases ending in mistrial from those cases ending in acquittal or conviction, noting initially that "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." 434 U.S. at 505. Although retrial may not be automatically barred when the State moves for a mistrial, the Supreme Court placed the burden of justifying the mistrial on the prosecution:

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

*Arizona v. Washington*, 434 U.S. 497, 505, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978).

Elaborating on manifest necessity, the Court stated, "[W]e assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." 434 U.S. at 506. Although finding that a high degree of necessity

was required for declaring a mistrial, the Court nevertheless bestowed considerable discretion on the trial court in making that determination. Assuming that defense counsel's statement was indeed improper and may have affected the jury, the Court noted:

> We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

434 U.S. at 511.

The Court went on to explain the considerations favoring appellate deference to the trial judge's evaluation of the significance of possible juror bias:

> He has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

434 U.S. at 513-14.

The Court stated that although deference should be given to the trial judge's decision, that decision nevertheless must be reached with " 'sound discretion.' " 434 U.S. at 514. In evaluating the lower court's action in that case, the Court noted that the trial judge did not act precipitately in responding to the request for mistrial. Instead, the judge gave both the defense counsel and the prosecutor opportunities to explain their positions on the propriety of a mistrial. The Court found that "the trial judge acted responsibly and deliberately, and accorded careful consideration to [defendant's] interest in having the trial concluded in a single proceeding." 434 U.S. at

516.

Finally, the Court stated that the trial judge did not need to make a specific finding of " 'manifest necessity,' " but, rather, the record need only show sufficient justification for the trial court's ruling. 434 U.S. at 516-17.

Returning to the record before us, and applying the principles previously noted, we first address the fact that there is no discussion by either the prosecution or the judge regarding the manifest necessity of a mistrial. However, as pointed out in *Arizona v. Washington*, a specific finding of manifest necessity is not required. The record need only show sufficient justification for the court's ruling, even though such a finding is obviously of some benefit to the appellate court and is encouraged.

In looking to the district court's justification for its ruling, we note that the court gave both counsel ample opportunities to explain their positions regarding the relevancy of defense counsel's statement and its impact on the jury. We agree with the court's determination that defense counsel's reference to the previous dismissal of the case against his client was irrelevant and prejudicial. The degree of prejudice suffered cannot be precisely measured; however, the court did consider the alternative of merely admonishing and instructing the jury. In so doing, the court found defense counsel's statement "highly prejudicial to the State's position" and not likely to be cured by admonition or instruction.

As the U.S. Supreme Court has stated, an appellate court should give deference to a trial judge's determination, since the trial judge actually listened to the tone of the arguments and observed the reaction of the jurors. Furthermore, a trial judge "is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be." *Arizona v. Washington*, 434 U.S. 497, 514, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). See, also, *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979) (the right to discharge the jury without prejudice to a future trial of the case on its merits must by necessity be inherent in the court, within its discretion). Since there was no actual recordation of defense counsel's opening statements, and we are left to review only a summation of the

improper remarks, we find it appropriate, and in accordance with U.S. Supreme Court rulings and Nebraska law, to leave the determination of prejudice to the trial court, absent abuse of discretion, which court heard the precise language and tone of counsel and observed the immediate reaction of the jurors. Furthermore, the U.S. Supreme Court has stated:

> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial as he did in *United States* v. *Dinitz*, 424 U.S. 600. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his "duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct." *Id.*, at 612.

434 U.S. at 512-13.

## CONCLUSION

We conclude that the district court did not act precipitately in responding to the mistrial request, but instead carefully weighed the alternatives before making the determination to grant a mistrial. The record provides sufficient justification for the court's ruling, and there being no abuse of discretion, we affirm the order granting a mistrial. Accordingly, jeopardy has not terminated in this case, and Levison may be retried on the

same charges without violating the double jeopardy protections of the U.S. and Nebraska Constitutions.

AFFIRMED.