The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Calvin Stewart GOLDEN,
Defendant–Appellant.

No. 03CA0191.

Colorado Court of Appeals,
Div. I.

March 10, 2005.

Rehearing Denied Dec. 29, 2005.

Certiorari Denied June 26, 2006.*

* Justice EID does not participate.

Chief Justice MULLARKEY would grant as to the following issue:

Whether the trial court properly excluded the sexual assault victim's admission that she was homosexual lovers with a female roommate prior to the alleged rape, where the defense failed to submit the admission in accordance with the rape shield statute.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

ROY, J.

Defendant, Calvin Stewart Golden, appeals from the judgment entered on a jury verdict finding him guilty of sexual assault through application of force or violence and sexual assault by means calculated to cause submission against the victim's will. We reverse and remand for a new trial.

According to the prosecution's version of the events, the female victim, then seventeen years old, was living with two men and another woman in a residence managed by defendant. Late one evening, defendant informed the residents by telephone that one of them would have to sign a lease. Defendant went to the residence shortly thereafter without the lease and contacted the victim, who voluntarily accompanied him back to his residence to sign the lease. During the trip back to the victim's residence, defendant sexually assaulted the victim in his automobile.

Defendant then drove her home and told her that she did not have to worry about paying rent and that she should not tell anybody about what happened. When she arrived home, she collapsed and informed her roommates that she had been raped. A subsequent medical exam revealed minor vaginal injuries, and a DNA comparison confirmed that semen samples found inside her were from defendant.

Defendant was charged with one count of sexual assault by causing submission through means reasonably calculated to cause submission against the victim's will, a class four felony, and one count of sexual assault with an aggravating circumstance of causing submission through application of force or violence, a class three felony, under § 18–3–402(1)(a), (4)(a), C.R.S.2004.

At trial, defendant did not deny that he had sexual contact with the victim; his theory of defense was that the sexual contact was consensual. Defendant did not testify and sought to establish his defense through cross-examination.

A jury convicted defendant of both counts, and he was sentenced to a term of sixteen years to life in prison under the Sex Offender Lifetime Supervision Act (SOLSA), § 18–1.3–1001, et seq., C.R.S.2004 (formerly § 16–13–801, et seq.). This appeal followed.

## I.

Defendant first contends that the trial court erred in limiting his cross-examination of the victim by excluding under § 18–3–407, C.R.S.2004, the rape shield statute, an inquiry into whether she was in a "committed romantic relationship" with a roommate at the time of the alleged assault. The purpose of the inquiry was to establish that the victim had a motive to lie concerning whether the sex was consensual. We agree.

Section 18–3–407 reads in pertinent part:

(1) Evidence of *specific instances* of the victim's or a witness' prior or subsequent *sexual conduct,* opinion evidence of the victim's or a witness' *sexual conduct,* and reputation evidence of the victim's or a witness' *sexual conduct* shall be presumed to be irrelevant except:

(a) Evidence of the victim's or witness' prior or subsequent *sexual conduct* with the actor;

(b) Evidence of *specific instances of sexual activity* showing the source or origin of semen, pregnancy, disease, or any similar evidence of *sexual intercourse* offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.

(Emphasis added.)

At the close of a pretrial hearing, the following exchange occurred:

THE COURT: ... Anything else that we need to deal with, folks?

THE DEFENSE: Not that I am aware of.

THE PROSECUTION: The only thing I would ask, Your Honor, is to—there is evidence in—in the discovery regarding the victim's sexual history and sexual orientation, and it's not relevant to the case under the Rape Shield Law. It should not come out, not be gone into by Defense.

THE DEFENSE: Judge, I think if it's not relevant it shouldn't come in. If it's relevant, then that's different.

THE COURT: Well, there had not been any request to pierce the rape shield at this point in time. I think there are time limitations with[in] which that has to occur.

THE PROSECUTION: That's correct.

At trial, defense counsel mentioned in opening statement that the victim was in a committed romantic relationship with one of her three roommates at the time of the assault. Then, while cross-examining the victim, the following exchange occurred:

DEFENSE COUNSEL: Now, you, at that time, were in a committed romantic relationship with one of your roommates, right?

VICTIM: No.

DEFENSE COUNSEL: You were not in a relationship with one of your roommates?

VICTIM: No, I wasn't.

After this exchange, defense counsel requested a bench conference, at which the following was said:

DEFENSE COUNSEL: If I can approach, Your honor.—Your honor, she [the victim], um, has testified now that she was not in a romantic relationship with one of her roommates. She has described her relationship ... several times in the past ... with [the female roommate] as one of being in a homosexual relationship; they were lovers.

THE COURT: You have not asked to pierce the rape shield. I'm not going to let you get into that.

DEFENSE COUNSEL: I'm asking at this point simply because she is denying it, this is impeachment -

THE COURT: The question is improper in the first place.

. . . .

DEFENSE COUNSEL: Judge, I need to know what part of the question was improper?

THE COURT: Hm?

DEFENSE COUNSEL: I need to know what part of my question was improper, because it goes to her motive to lie.

THE COURT: She was in a committed relationship, that goes to prior sexual contact. You did not ask to pierce the rape shield. You are not allowed to get into that area.

DEFENSE COUNSEL: Well this –

THE COURT: That's the ruling of the court.

On appeal, defendant argues, as he did in the trial court, that the victim's prior statements pertaining to her alleged committed romantic relationship had nothing to do with the victim's past sexual conduct, but rather, were relevant to the victim's motive to lie in telling the roommate, to whom she first reported the events, that she had been assaulted by defendant and the sexual contact was not consensual.

The essence of defendant's argument is that to avoid damaging her committed romantic relationship with her roommate, the victim told her roommate that defendant had assaulted her. Thus, defendant argues, the trial court's exclusion of the prior inconsistent statements concerning a committed romantic relationship constituted a violation of his right to confront witnesses against him under the federal and state constitutions.

The initial issue is whether evidence of the existence of a "committed romantic relationship" at the time of the alleged assault falls within the rape shield statute. The appropriate construction of a statute is a question of law. *People v. Coleby*, 34 P.3d 422 (Colo.2001). Our review of the trial court's interpretation of the statute is de novo. *People v. Miller*, 97 P.3d 171 (Colo. App.2003). In construing the rape shield statute, as with legislation in general, a court's primary task is to give effect to the intent of the legislature. In discerning legislative intent, we first look to the meaning of the words used in the statute, and if the language is not ambiguous, we rely on the plain meaning of those words. *People in Interest of K.N.*, 977 P.2d 868 (Colo.1999).

The legislative purpose of the rape shield statute was set forth in *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978): The court stated:

The basic purpose of section 18–3–407, therefore, is one of public policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.

This statute represents the Colorado General Assembly's response to a national trend which began in 1974 to reform procedures governing state prosecutions of various sexual assaults. These reforms constitute legislative recognition of the changing perception of rape as, not primarily a sex offense, and certainly not a crime of passion, but rather a hostile crime of violence and domination "calculated to humiliate, injure and degrade the female."

*People v. McKenna, supra*, 196 Colo. at 371–72, 585 P.2d at 278 (footnotes omitted); *see also People v. Murphy*, 919 P.2d 191 (Colo. 1996); *People v. Braley*, 879 P.2d 410 (Colo. App.1993).

Neither the General Assembly nor our courts have defined the term "prior or subsequent sexual conduct." *People v. Gholston*, 26 P.3d 1 (Colo.App.2000). However, our supreme court, in *People v. Murphy, supra*, has held that sexual conduct includes sexual orientation.

In *People v. Murphy, supra*, both the defendant and the victim were male. There, as here, the defendant's theory of defense was consent. The defendant sought to cross-examine the victim on his sexual orientation after he had testified that he had a wife and child and that his contact with the defendant was "sick and abnormal." The defendant also wanted to introduce evidence of the vic-

tim's prior homosexual contact with a young man.

The defendant's theory was that a homosexual man would more likely consent to a homosexual sexual contact than a heterosexual man. The trial court rejected the evidence of the prior homosexual contact on the grounds that the defendant's offer of proof was insubstantial and, therefore, the evidence did not meet the requirements of the rape shield statute. *See* § 18–3–407(2)(c), C.R.S.2004.

■ The supreme court affirmed, but went further, stating: "Evidence of past sexual conduct is closely related to evidence of sexual orientation. We therefore conclude, as did the court of appeals, that the Rape Shield Statute's prohibition against evidence of a rape victim's past sexual conduct also precludes evidence of sexual orientation." *People v. Murphy, supra,* 919 P.2d at 195.

At the outset, the trial court, while concluding that the initial questions were improper, did not strike them or the answers; nor was it requested to do so. While we recognize that a "committed romantic relationship" between adults may be generally understood to have a sexual component, the initial questions did not, standing alone, inquire into that component or any sexual conduct. Further, because the victim had both male and female roommates, the initial questions did not necessarily imply a homosexual relationship.

■ We conclude that statements acknowledging the existence of a "committed romantic relationship" are not evidence of sexual conduct or, for that matter, sexual orientation for purposes of the statute. We are not convinced that the legislature intended such a broad sweep when it enacted the statute. Rather, the statute was enacted to "provide rape and sexual assault victims greater protection from humiliating and embarrassing public 'fishing expeditions' into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case." *People v. McKenna, supra,* 196 Colo. at 371–72, 585 P.2d at 278.

We further conclude that the *Murphy* decision does not address the issues presented here, that is, whether the testimony that the victim was in a committed romantic relationship was relevant to the victim's motive to lie, and whether the victim may be impeached with her prior inconsistent statements.

In the *Murphy* sense, the victim's sexual orientation was not offered into evidence.

Therefore, we conclude that the trial court erred in concluding that the initial questions as to whether the victim was in a committed romantic relationship at the time of the alleged offense inquired into sexual conduct and in foreclosing cross-examination through use of prior inconsistent statements in that regard.

The Supreme Court of Georgia, under a similar rape shield statute, addressed the issue of the scope of that statute under comparable circumstances in *Richardson v. State,* 276 Ga. 639, 581 S.E.2d 528 (2003). There, it was the defendant's theory that the victim concocted her story of the rape to salvage her chances of rekindling the romantic relationship with the former boyfriend. The trial court did not allow the cross-examination on the basis that it was irrelevant and barred by the Georgia rape shield statute that prohibited cross-examination "relating to the past sexual behavior of the complaining witness." *Richardson v. State, supra,* 581 S.E.2d at 529. The defendant was subsequently convicted.

The Georgia Supreme Court reversed the conviction, concluding that the plain and unambiguous language of the rape shield statute excluded only evidence concerning the sexual nature of the victim's past relationships. In so ruling, the court emphasized the plain language of the statute and stated:

Evidence merely that the victim has or had a romantic relationship with another man does not reflect on her character for sexual behavior. Therefore, so long as [the defendant] confined his questioning to the non-sexual nature of the victim's former relationships, the statute would not be a basis for curtailing his cross-examination of her.

. . . .

The proposed inquiry was confined to the existence of a relationship with an ex-boyfriend and whether the desire to reestablish that relationship was a motive to make a false claim of rape. "The possibility that [the proposed questions] may have been construed as implicating past sexual conduct could have been eliminated with a corrective instruction to the jury." Therefore, the trial court ... erred in relying upon the rape-shield law to preclude [the defendant] from cross-examining the victim in this regard.

*Richardson v. State, supra*, 581 S.E.2d at 529 (citations omitted; quoting *George v. State*, 257 Ga. 176, 356 S.E.2d 882 (1987)).

Here, the statute would not have been violated had defendant been allowed to inquire into the victim's prior inconsistent statements acknowledging a committed romantic relationship. The victim would not have been subjected to a fishing expedition into her past sexual conduct. Rather, the inquiry would have called into question her credibility and her possible motive in telling her roommates that she had been sexually assaulted. Such an inquiry is proper under our state's rules of evidence. *See* § 16–10–201, C.R.S.2004; CRE 607, 613; *People v. Card*, 42 Colo.App. 259, 596 P.2d 402 (1979). And, if necessary, any allusion to the victim's sexual orientation could be redacted from any questions, answers, and prior statements without diminishing the purpose and effect of the challenge to the victim's credibility.

Moreover, any inference that the jury might draw concerning the victim's past or subsequent sexual conduct would not necessarily mandate exclusion under the rape shield statute. *See People v. Cobb*, 962 P.2d 944, 951 (Colo.1998)("evidence does not become inadmissible under either Rule 404(b) or the rape shield statute simply because it might indirectly cause the finder of fact to make an inference concerning the victim's prior sexual conduct"). Thus, in our view, it was error for the trial court to exclude defendant's impeaching evidence under the rape shield statute.

## II.

■ Because the error diminished defendant's exercise of his confrontation rights, it is of constitutional dimension and a new trial is required unless the error was harmless beyond a reasonable doubt.

The Confrontation Clauses of the United States and Colorado Constitutions guarantee a defendant in a criminal proceeding the right to confront the witnesses against him or her. U.S. Const. amend. VI; Colo. Const. art. II, § 16.

■ Our supreme court, in *People v. Cobb, supra*, stated:

A trial court has the authority to impose some limits on cross examination, but where the limits imposed prevent a criminal defendant from using cross examination to explore the bias or prejudice of a witness against him, the requirements of the Sixth Amendment are not met. In order to obtain a new trial, [the defendant] need not show that the limits on cross examination would have changed the outcome, but rather that the ruling preventing him from challenging [the victim's] credibility was not harmless beyond a reasonable doubt.

*People v. Cobb, supra*, 962 P.2d at 950 (citations omitted.)

■ To find a constitutional harmless error, an appellate court must conclude beyond a reasonable doubt that the error did not contribute to the guilty verdict. The test is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Bernal v. People*, 44 P.3d 184 (Colo.2002).

In *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), a defendant who was charged with kidnapping, rape, and forcible sodomy sought to demonstrate that the victim lied about their consensual sex in order to protect her ongoing romantic relationship with another man. To show this apparent motive to lie, the defendant requested permission to introduce evidence concerning the romantic relationship, but the trial court disallowed it.

■ The Supreme Court reversed the defendant's conviction, concluding that the trial court's refusal to allow the defendant to impeach the victim with evidence supporting a motive to lie violated the defendant's Sixth Amendment rights to be confronted with the witnesses against him and that the error was not harmless beyond a reasonable doubt. In so concluding, the Court reaffirmed its previous decision in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), in which it held:

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Delaware v. Van Arsdall, supra,* 475 U.S. at 680, 106 S.Ct. at 1436 (quoting *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)).

Thus, the Court in *Olden* concluded that, had the defendant been allowed to introduce evidence of the victim's relationship with the other man, "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Olden v. Kentucky, supra,* 488 U.S. at 232, 109 S.Ct. at 483 (quoting *Delaware v. Van Arsdall, supra,* 475 U.S. at 680, 106 S.Ct. at 1436).

The Court examined a variety of factors in determining whether the trial court's error was harmless beyond a reasonable doubt. Those factors included the importance of the witness's testimony in the prosecution's case, the cumulative nature of the testimony, the presence or absence of evidence corroborating or contradicting the witness's testimony on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Olden v. Kentucky, supra,* 488 U.S. at 232–33, 109 S.Ct. at 483–84; *see also Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In reviewing the record in this instance, and pursuant to the principles articulated in *Chapman, Van Arsdall,* and *Olden,* we cannot conclude beyond a reasonable doubt that the trial court's error did not contribute to the verdict. The victim's testimony was central and critical to the prosecution's case and to defendant's defense of consent, which he attempted to establish by cross-examination alone. And, while the jury apparently believed the victim, we cannot determine how close a question it was, nor can we estimate the extent to which the credibility of the victim would have been impacted by the excluded cross-examination.

Thus, the trial court's error in not permitting inquiry into the victim's alleged past inconsistent statements was not harmless beyond a reasonable doubt, and the conviction must be reversed and the matter remanded for a new trial.

Having so concluded, we need not address defendant's argument that the Sex Offender Lifetime Supervision Act, § 18–1.3–1001, et seq., is unconstitutional, or that his sentence is disproportionate.

Accordingly, the judgment is reversed, and the case is remanded for a new trial. In the event that the same line of questioning is again pursued, the trial court may, at the request of either party, limit the scope of the questions, answers, and rebuttal testimony to exclude any implication that the victim's existing committed romantic relationship, if any, was homosexual in nature.

Judge CASEBOLT and Judge STERNBERG concur.