The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Tracy David OWENS, Defendant–Appellant.

No. 05CA1577.

Colorado Court of Appeals, Div. VI.

May 17, 2007.

Rehearing Denied July 19, 2007.

Certiorari Denied May 12, 2008.

---

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Law Firm of Ted Hess, P.C., Theodore G. Hess, Glenwood Springs, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Tracy David Owens, appeals the judgment of conviction entered upon a jury verdict finding him guilty of unlawful sexual contact, a class 1 misdemeanor under § 18–3–404(1)(a), (2)(a), C.R.S.2006. We reverse and remand for a new trial.

Defendant was originally charged with sexual assault. The prosecution alleged that he took advantage of his acquaintance with a young woman whose husband was serving overseas in the military. According to the alleged victim, over her objection, defendant subjected her to various acts of sexual contact and intrusion. The incident ended when a male friend of the alleged victim came to the door.

According to defendant, the alleged victim seduced him and welcomed his acts until the friend appeared at the door.

Prior to trial, defendant moved, pursuant to the rape shield statute, § 18–3–407, C.R.S. 2006, to introduce evidence of a sexual relationship between the alleged victim and the male friend. The proffered evidence, defendant said, (1) would establish that the friend was the alleged victim's paramour and (2) was relevant to show a motive to lie on her part, that is, upon being caught by the friend in a compromising position, to maintain her sexual relationship with the friend, the alleged victim had to cover up the true nature of her sexual liaison with defendant.

The trial court denied defendant's motion and prohibited him from introducing evidence of, inquiring into, or otherwise alluding to, acts of sex or sexual relations between the alleged victim and the friend.

On the morning of trial, the court reminded the parties of its ruling. During opening statement, however, defense counsel referred to the friend as the alleged victim's boyfriend, and the trial court declared a mistrial. At that point, defendant unsuccessfully requested that further prosecution of him be barred as a violation of double jeopardy.

A new trial commenced the next day before a different judge and jury. In addition to the alleged victim's, the friend's, and defendant's testimony, the jury also had before it evidence that, in taped phone conversations

with both the alleged victim and the police, defendant admitted (1) doing the acts attributed to him by the victim and (2) having heard her repeatedly say either "no" or "stop." In both conversations, he had indicated his belief that she had not really wanted him to stop because she had not voiced her objections very loudly (which, she explained, was because she did not want to wake her baby). In his conversation with the alleged victim, defendant admitted using poor judgment, expressed a feeling of shame, and apologized for his actions.

In closing, defendant argued that the alleged victim had fabricated the sexual assault accusation against him to accommodate her relationships with the friend, her mother, her sister, and her husband.

The jury found him guilty of unlawful sexual contact.

### I. Double Jeopardy

■ Initially, we reject defendant's contention that he was improperly subjected to a second prosecution in violation of the double jeopardy prohibitions of the Fifth and Fourteenth Amendments to the United States Constitution and article II, § 18 of the Colorado Constitution.

In *People v. Berreth,* 13 P.3d 1214, 1216 (Colo.2000), the supreme court stated:

If a criminal trial is terminated prior to its completion, double jeopardy will bar a second trial unless the trial court has sufficient legal justification for declaring a mistrial over the defendant's objection. Such justification exists only if, under all the circumstances of the case, there is a "manifest necessity" for the mistrial.

(Citations omitted); *see* § 18–1–301(1)(d), C.R.S.2006 (also recognizing that a prosecution is barred whenever a former prosecution for the same offense has been improperly terminated)..

■ The manifest necessity doctrine recognizes that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed.

974 (1949); *see People v. Baca,* 193 Colo. 9, 11–12, 562 P.2d 411, 412–13 (1977).

■ To justify a finding of manifest necessity, not only must the circumstances be serious and outside the control of the trial court, they must also be such that "continuing with the trial would interfere with or retard the 'administration of honest, fair, evenhanded justice to either, both, or any, of the parties to the proceeding.'" *People v. Berreth, supra,* 13 P.3d at 1217 (quoting *People v. Castro,* 657 P.2d 932, 942 (Colo.1983), and *Brown v. People,* 132 Colo. 561, 569, 291 P.2d 680, 684 (1955)).

Here, the trial court declared a mistrial based on the misconduct of defense counsel in willfully violating the court's order not to introduce evidence of, inquire into, or otherwise allude to, acts of sex or sexual relations between the alleged victim and the friend.

Defendant asserts, in the first instance, that his reference to the friend as a "boyfriend" did not violate the court's order. In support of his assertion, he directs our attention to that part of the dictionary definition of "boyfriend" as simply "a male friend" or "a frequent, regular, or favorite escort or male companion of a girl or woman." *Webster's Third New International Dictionary* 264 (1986). However, he overlooks the other part of the definition of boyfriend, "the male partner in an intimate or esp. an illicit relationship: Lover, Paramour," *Webster's, supra,* at 264, and the context in which he had used the word.

During opening statement, defense counsel argued that there were various relationships "that the evidence is going to bring out and that [he thought] it's important to understand." The first two, counsel said, were between defendant and his wife and between the alleged victim and her husband. Then he added, "Now, there is a third important relationship here, and that is between [the alleged victim], the wife of the marine who is stationed overseas, and [the friend]. And [the friend] had—we believe the evidence will show, had become her boyfriend."

■ Given the context in which the term "boyfriend" was used by defendant, we, like

the trial court, conclude that the jury would have interpreted it as referencing a "male partner in an intimate or esp. an illicit relationship: Lover, Paramour," with all the sexual connotations such meaning carries. Thus, the trial court correctly determined that defendant had violated its order not to allude to sex acts or sexual relations between the alleged victim and the friend.

Nor did the court err in concluding that defendant's violation of the order was willful. As the trial court noted:

In fear that you would do this, sir, the court entered oral findings on December 2. Later that day a written order was issued specifically instructing you that you can say they were friends but not more, ... absolutely no more.

Again, so that there would be no misunderstanding on your part and so that we would not have a mistrial, we went over it again this morning, and again you said you understood.

Defendant asserts, however, that alternatives other than a mistrial were available to the trial court. We are not persuaded.

In accord with the purposes of the rape shield statute, the court's order was designed to protect the victim from the jury's inferring that she was sexually promiscuous, making her, for that reason alone, unworthy of belief and more likely to have engaged in consensual sex with defendant. *See People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 277–78 (1978).

Furthermore, implying the alleged victim had a sexual relationship with another man while her husband was away in the military could be unfairly prejudicial to the alleged victim and the state. *See People v. Gibbens,* 905 P.2d 604, 608 (Colo.1995) (unfair prejudice refers to an undue tendency to inject considerations extraneous to the merits of the lawsuit, such as the jury's bias, sympathy, anger, or shock).

Next, the trial court considered and rejected alternatives to a mistrial, finding, "The prosecutor is right. The bell has been rung; it can't be unrung."

In reviewing this determination, we are mindful of the United States Supreme Court's admonition that, although the declaration of a mistrial might not be strictly "necessary" following defense misconduct, a mistrial under such circumstances may be in the interest of justice:

We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

. . . .

... Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Arizona v. Washington,* 434 U.S. 497, 511, 513, 98 S.Ct. 824, 833–34, 54 L.Ed.2d 717 (1978) (possible juror bias created by defense counsel's improper comment can create a "high degree of necessity" to declare a mistrial); *see also People v. Barfield,* 288 Ill. App.3d 578, 223 Ill.Dec. 855, 680 N.E.2d 805, 810 (1997)("The law recognizes that judges are not clairvoyant and that his or her determination that the jury could not render an impartial verdict may or may not be correct."); *State v. Levison,* 1 Neb.App. 1051, 510 N.W.2d 495, 500 (1993)("The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his 'duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop ... professional misconduct.'" (quoting *United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976)) ).

Under the circumstances, we perceive no abuse of the trial court's discretion in ordering a mistrial. *See State v. Abboud,* 13 Ohio App.3d 62, 468 N.E.2d 155, 157–58 (1983)("A court may, in its discretion, declare a mistrial on account of an isolated instance of attorney misconduct even where, because of overwhelming evidence, the misconduct could not affect the decision of the jury."); *cf. State v. Burnett,* 13 Kan.App.2d 60, 762 P.2d 192, 195 (1988) ("A defendant should not be able to challenge a mistrial declaration and claim double jeopardy where the mistrial was caused by the defense attorney's misconduct or error.").

Finally, we observe that our resolution of this issue in no way depends upon the validity of the court's order not to allude to acts of sex or sexual relations between the alleged victim and the friend. If the rule were otherwise, defense counsel would be encouraged to willfully violate court orders, hoping to obtain a benefit (outright dismissal of the case) that they could not obtain through the proper and orderly process of challenging the ruling in an original proceeding or on appeal.

### II. Exclusion of Evidence

■ Defendant contends that the trial court erred in precluding him from inquiring into, and if necessary, presenting evidence of, a romantic relationship between the alleged victim and the friend. Under the particular circumstances presented here, we agree.

During trial, defendant testified that, before engaging in any sexual activity, he and the alleged victim had discussed the friend, and the victim had shown him a high school yearbook picture of the friend. According to defendant (and the friend), the friend called the apartment several times that evening. The friend related that, when he came to the apartment at one or two a.m., defendant was not wearing a shirt. And defendant testified that the alleged victim told the friend that he needed to leave, and that, after the friend left, she sobbed hysterically and then sat with defendant on the couch and discussed the friend.

At that point in defendant's testimony, a juror inquired whether the alleged victim had discussed with defendant the nature of her relationship with the friend. Out of the presence of the jury, defendant answered: "Yes, sir, she did.... Her exact word was she called him her boyfriend.... [Further] [s]he discussed all their sexual activities, how many times, how long, how often, and at one point she asked me if I thought this was wrong."

In accord with the pretrial ruling, the trial court did not permit defendant to answer the question in the presence of the jury.

■ Under § 18–3–407, evidence relating to an alleged rape victim's sexual conduct or reputation for sexual conduct, or others' opinions about the alleged victim's sexual conduct, is generally presumed to be irrelevant. There are three exceptions to this presumption, however: (1) evidence of a victim's prior or subsequent sexual conduct with the accused; (2) specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence; and (3) evidence otherwise relevant to a material issue in the case. *See People v. Harris,* 43 P.3d 221, 225 (Colo.2002).

In *People v. Golden,* 140 P.3d 1, 6 (Colo. App.2005), a division of this court found that the trial court should have allowed an alleged sex assault victim to be cross-examined about her "committed romantic relationship" with a roommate. The division reasoned that, inasmuch as the evidence did not explicitly reference sexual activity, it did not fall within the prohibition of § 18–3–407. And because the evidence shed light on a plausible motive for the victim to fabricate an allegation of sexual assault (that is, to maintain her relationship with the roommate), the division held that it was constitutional error to prohibit introduction of that evidence. *People v. Golden, supra,* 140 P.3d at 6.

We need not determine here whether the *Golden* division correctly analyzed whether the defendant's proffered evidence fell within or without the ambit of Colorado's rape shield statute. *Cf. People v. Murphy,* 919 P.2d 191, 195 (Colo.1996)(because evidence of sexual orientation is "closely related" to "evidence of past sexual conduct," it falls within the coverage of the statute).

Instead, we conclude that the evidence here falls within an exception listed in the statute. The evidence of the alleged victim's romantic—and, indeed, sexual—relationship with the friend was relevant to a material issue in the case, namely, the victim's motive to lie. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)) ).

In *Murray v. State*, 219 Ga.App. 405, 465 S.E.2d 515, 516 (1995), the Georgia Court of Appeals stated, in terms applicable to the present case:

> When the defense to a charge of sexual assault is built upon a theory that the alleged victim lied in accusing [the defendant] in order to protect her relationship with another man, it is easily seen that evidence of the victim's relationship ... with that other man is a crucial fact for the jury's consideration. It supports the defense theory by placing before the jury a strong motivation for the victim to lie.

*See also Olden v. Kentucky*, 488 U.S. 227, 233, 109 S.Ct. 480, 484, 102 L.Ed.2d 513 (1988) (restricting cross-examination of victim in sex assault case regarding her cohabitation with a third party deprived the defendant of his Sixth Amendment right to confront adverse witnesses); *United States v. Platero*, 72 F.3d 806, 814–16 (10th Cir. 1995) (exclusion of evidence, in sex assault case, about alleged victim's romantic or sexual relationship with third party violated defendant's confrontation rights); *People v. Golden, supra*, 140 P.3d at 6 (refusing to allow cross-examination about existence of victim's "committed romantic relationship" with third party denied defendant his Sixth Amendment right to confront witnesses).

■ We do not mean to suggest that the existence of a past or present romantic or sexual relationship between an alleged victim and a third party automatically opens the door to inquiry or introduction of evidence about that relationship in a sex assault case. Consistent with a defendant's constitutional rights to confront witnesses and present a defense, the trial court may, in its discretion, limit or preclude inquiries or items of evidence that are irrelevant or only marginally relevant. *See Clark v. Arizona*, 548 U.S. 735, ——, 126 S.Ct. 2709, 2731–32, 165 L.Ed.2d 842 (2006) (discussing right to present a defense); *Delaware v. Van Arsdall, supra*, 475 U.S. at 678–79, 106 S.Ct. at 1435 (discussing right of confrontation); *People v. Hogan*, 114 P.3d 42, 54–55 (Colo.App.2004) (discussing right of confrontation); *People v. Scearce*, 87 P.3d 228, 233 (Colo.App. 2003)("the right to present a defense does not guarantee a defendant a right to question witnesses in violation of the rules of evidence"); CRE 402, 403.

■ Consequently, a trial court could, in its discretion, exclude evidence of a romantic or sexual relationship that was too remote or attenuated to be of significant probative value in suggesting a plausible motive to lie on the part of an alleged victim. Similarly, the court could exclude evidence of even a significant romantic or sexual relationship where nothing in the facts suggests that the other party to the relationship would somehow have discovered or had reason to suspect the victim's purported infidelity with the defendant.

Here, however, defendant's theory was that (1) the alleged victim had an intimate relationship with the friend; (2) because the friend interrupted the sexual encounter, the friend had good reason to suspect the victim was unfaithful to him; and (3) the alleged victim was emotionally upset by the friend's discovery of her actions. Under these circumstances, we conclude that the nature of the romantic and sexual relationship with the friend was relevant and potentially highly probative of the victim's motive to lie. Consequently, the trial court erred in excluding it.

The court's exclusion of this motive evidence infringed upon defendant's constitutional right to confront witnesses. *See Olden v. Kentucky, supra,* 488 U.S. at 233, 109 S.Ct. at 484 (restricting cross-examination of victim regarding motive); *People v. Golden, supra,* 140 P.3d at 6 (same); *see also State v. Colton,* 227 Conn. 231, 630 A.2d 577, 587–89 (1993) (exclusion of extrinsic evidence impeaching key witness's motive, bias, and interest violated defendant's confrontation rights); *Rankin v. State,* 41 S.W.3d 335, 344–45 (Tex.App.2001) (exclusion of extrinsic evidence impeaching witness's bias, interest, and prejudice, treated as Confrontation Clause error).

[9, 10] Consequently, reversal for a new trial is required unless we are persuaded beyond a reasonable doubt that the error did not contribute to defendant's conviction. *See Olden v. Kentucky, supra,* 488 U.S. at 231–32, 109 S.Ct. at 482–83 (Confrontation Clause); *People v. Harris, supra,* 43 P.3d at 230 (same).

█ If a reasonable possibility exists that the error contributed to the verdict, then the error is not harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *People v. Jurado,* 30 P.3d 769, 772 (Colo.App.2001).

In analyzing the impact of error in this context, we ask whether a reasonable jury might have received a significantly different impression of the victim's credibility and, consequently, the prosecution's case, had defendant been allowed to question her about, or introduce evidence of, her relationship with the friend. In making this assessment, we consider a variety of factors, including the importance of the witness's testimony to the prosecution's case, the cumulative nature of the testimony, the presence or absence of evidence corroborating or contradicting the witness's testimony on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *See People v. Golden, supra,* 140 P.3d at 7 (citing *Olden v. Kentucky, supra,* 488 U.S. at 232–33, 109 S.Ct. at 483–84).

Here, the alleged victim's testimony was crucial to the prosecution's case, and the proffered evidence was not cumulative to any other presented at trial. There was evidence both corroborating and contradicting her testimony on material points.

In recorded statements that he made to the victim and the police soon after the event, defendant acknowledged, as he did at trial, having committed the acts attributed to him and the victim's having told him "no" or "stop" at various points in the encounter. But, in his statements, he asserted that her actions belied her directives, and, in his trial testimony, he related that he had stopped when she said "no" or "stop" and had gone forward again only after receiving verbal and nonverbal indications from her that he could do so.

In our view, the prosecution presented a strong, although not overwhelming, case of defendant's guilt: the critical issue of whether the victim consented to defendant's acts was definitely in dispute. Under these circumstances, we cannot conclude, beyond a reasonable doubt, that a reasonable jury would not have formed a significantly different impression of the victim's credibility and, consequently, the prosecution's case, had defendant been allowed to question the victim about, or otherwise introduce evidence of, her sexual or romantic relationship with the friend. *See Olden v. Kentucky, supra; People v. Golden, supra.*

Thus, we cannot conclude that the error was harmless. The case must be remanded for a new trial in which defendant will be permitted to elicit evidence of the alleged victim's romantic and sexual relationship with the friend, for the limited purpose discussed previously in this opinion. We see no reason why, however, the trial court would be compelled upon retrial to admit evidence of the particulars or precise nature of the alleged victim's sexual conduct with the friend.

Accordingly, the judgment of conviction is reversed, and the case is remanded for a new trial.

Judge GRAHAM concurs.

Judge RUSSEL specially concurs.

Judge RUSSEL specially concurring.

For the most part, I agree with the views expressed in the majority opinion:

I. The trial court found that defense counsel willfully violated a pretrial order by using the term "boyfriend" to imply a sexual relationship between the alleged victim and her male friend. Because the record supports these findings, we must uphold the court's order declaring a mistrial and requiring defendant to stand trial again. It does not matter whether the court's pretrial order was correct. Right or wrong, a trial court must be able to enforce its own orders.

II. Defendants must be allowed to suggest, through evidence and argument, that a witness has a motive to lie. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Here, the defense should have been allowed to advance the theory that the alleged victim lied about her sexual contact with defendant— saying it had been unwelcome, when it had been consensual—so that she could maintain her relationship with her boyfriend. By precluding this line of impeachment, the trial court abridged defendant's constitutional right to confront adverse witnesses. *See Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 484, 102 L.Ed.2d 513 (1988); *People v. Golden,* 140 P.3d 1, 6 (Colo.App.2005). Because the court's error was not harmless beyond a reasonable doubt, defendant is entitled to a new trial.

I respectfully disagree, however, with the majority's remand order. The majority states that, on retrial, the trial court must allow defendant to "elicit evidence of the alleged victim's romantic *and sexual* relationship with the friend" (emphasis added). I do not agree that this is necessary.

In some cases, evidence of sexual conduct is essential if a jury is to gain a proper understanding of a witness's motive to lie.

*See, e.g., Commonwealth v. Joyce,* 382 Mass. 222, 415 N.E.2d 181 (1981) (the defendant was allowed to show that the alleged victim had been charged with prostitution after being found engaged in sexual activity in a car; this evidence was admissible to show that her allegations against the defendant may have been motivated by a desire to avoid further prosecution).

But in other cases, evidence of sexual conduct is not essential to establish the witness's motive. Courts have recognized, for example, that evidence of sexual conduct is not essential where the witness's motive may be premised on evidence of a romantic relationship. *See, e.g., People v. Golden, supra,* 140 P.3d at 6 (remanding for new trial at which defendant may elicit evidence that the witness was in a "committed romantic relationship"); *Richardson v. State,* 276 Ga. 639, 581 S.E.2d 528 (2003) (evidence that the victim wanted to rekindle a romantic relationship with another man was admissible so long as the defendant confined questioning to the nonsexual nature of the relationship); *State v. Pride,* 528 N.W.2d 862, 865, 867 n. 5 (Minn.1995) (evidence that the victim had a motive to lie "in an effort to move her relationship with [another man] from friendly to romantic" was admissible where the defendant "made it clear he did not intend to ask questions regarding the sexual nature of their relationship").

Here, defendant theorized that the alleged victim was motivated by a desire to preserve her relationship with her boyfriend. Because this desire could be the same regardless of whether the relationship was sexual, evidence of the alleged victim's sexual conduct has little incremental probative value. I therefore would allow the trial court to exclude evidence of the victim's sexual conduct (including specific instances of conduct, as well as any general reference to sexual activity) under CRE 403 and § 18–3–407, C.R.S. 2006. In my view, such a ruling would not abridge defendant's constitutional right of confrontation. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *People v. Saiz,* 32 P.3d 441, 449 (Colo.2001) ("A trial court retains the discretion to assess the incremental pro-

577

bative value of evidence offered by a criminal defendant and to exclude even logically relevant evidence that would be more wasteful of time, confusing, or misleading than helpful to the jury.").