MOORE, Chief Justice
(dissenting).
I respectfully dissent. The defendant, Sherman Fitzgerald Tate, was accused of engaging in deviate sexual intercourse with two 15-year-old students while he was employed as a mentor with the Youth Advocate Program at Pointe Academy in Mobile. I believe Tate should have been permitted to offer in his defense evidence of the existence of the two victims’ “romantic relationship” with each other, evidence I believe could be relevant to the victims’ alleged bias against Tate or their collusion but that is not necessarily barred by Rule 412, Ala. R. Evid., the rape-shield rule.
According to the facts before this Court, between December 2009 and April 2010, when the events in this case allegedly took place, Tate knew that the two victims, K.R. and T.E., were bisexual and apparently conveyed this information to the mother of one of the victims. Tate had also commented that the victims were “talking together,” which, we are told, is “a euphemism [meaning] that they were involved in a relationship.” Trial counsel stated that this homosexual relationship “would be in the middle of the time frame when they are claiming he was doing something to them.” Trial counsel also presented KR.’s witness interview in which “she stated that she had had a dating relationship with *946 T.E., the other state’s witness, ... in the timeframe while she was a student at Pointe Academy.” Trial counsel stated several times that he did not intend to cross-examine the victims regarding their possible sexual activities unrelated to the alleged instances with Tate.
Based on trial counsel’s proffer, the trial court found that “going beyond to know when each other, [sic] being friends is more prejudicial than probative.... I think the reference is still more prejudicial than probative.” Petition at 6-7. In its unpublished memorandum, the Court of Criminal Appeals held:
“Tate’s theory that T.E. and K.R. were previously engaged in a sexual relationship with one another, giving them both motive and the opportunity to concoct the false sodomy allegations against him, was, at best, speculative and would have confused the jury by diverting its attention to issues that were not germane to this trial.”
The relevant version of Rule 412 renders inadmissible “evidence relating to the past sexual behavior of the complaining witness.” Rule 412(b), Ala. R. Evid. The rule bars ‘“[e]vidence of particular acts of un-chastity on the part of the victim with a third person.’ ” McGilberry v. State, 516 So.2d 907, 914 (Ala.Crim.App.1987) (emphasis added) (construing § 12-21-23, Ala. Code 1975 (the rape-shield statute), superseded by Rule 412 effective January 1, 1996). Tate’s proposed cross-examination was confined to the existence of the two victims’ romantic relationship with one another; it was not exploring the specifics of their past sexual behavior. In addition, Tate’s proposed cross-examination did not focus on the victims’ sexual behaviors with third persons, but with one another. Rule 412 does not bar cross-examination regarding a victim’s romantic relationship or even sexual behavior with another complaining victim. Cross-examination regarding the victims’ romantic relationship with one another does not become inadmissible just because the jury might infer from that testimony that the victims had engaged in homosexual acts.
I believe Tate has presented this Court with a cognizable conflict between the decision of the Court of Criminal Appeals and the decision in Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). I believe that ‘“[a] reasonable jury might have received a significantly different impression of [the witness’] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.’ ” Olden, 488 U.S. at 232 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). The trial court’s finding that evidence indicating that the victims were “friends” was more prejudicial than probative cannot “justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victims’] testimony.” Id.
Tate’s trial counsel made a sufficient proffer that Tate knew that the victims were involved in a romantic relationship with one another at the time they accused Tate of sodomy. Tate’s knowledge of the victims’ romantic relationship, coupled with the fact that Tate informed the mother of one of the victims of that relation.ship, would make the proposed cross-examination relevant to show that the victims had possibly fabricated the charges against Tate.[1]1 believe that we should resolve this *947 material question of first impression, and I therefore dissent from denying the writ.

. Sister states have likewise made this distinction in applying their rape-shield rules. See, e.g., Miskelley v. State, 480 So.2d 1104 (Miss.1985) (trial court erred in restricting cross-examination of witness in murder trial as to her dating relationship with victim and sexual relationship with defendant, where prosecution’s theory was that defendant killed victim because of his jealousy of victim’s relationship with witness; such cross-examination was *947 relevant to witness’s interest, bias, motive, hostility, and credibility); Commonwealth v. Joyce, 382 Mass. 222, 227, 415 N.E.2d 181, 185 (1981) ("We do not believe that the prohibition in the rape-shield statute sweeps so broadly as to render inadmissible evidence of specific instances of a complainant's sexual conduct in situations when that evidence is relevant to show the complainant’s bias.”); Richardson v. State, 276 Ga. 639, 640, 581 S.E.2d 528, 529 (2003) ("Evidence merely that the victim has or had a romantic relationship with another man does not reflect on her character for sexual behavior. Therefore, so long as Richardson confined his questioning to the non-sexual nature of the victim's former relationships, the statute would not be a basis for curtailing his cross-examination of her.’’); People v. Golden, 140 P.3d 1, 5-6 (Colo.Ct.App.2005) (“While we recognize that a ‘committed romantic relationship’ between adults may be generally understood to have a sexual component, the initial questions did not, standing alone, inquire into that component or any sexual conduct.... Here, the [rape-shield] statute would not have been violated had defendant been allowed to inquire into the victim's prior inconsistent statements acknowledging a committed romantic relationship. The victim would not have been subjected to a fishing expedition into her past sexual conduct. Rather, the inquiry would have called into question her credibility and her possible motive in telling her roommates that she had been sexually assaulted.”); and Kaplan v. State, 451 So.2d 1386, 1387 (Fla.Dist.Ct.App.1984) ("We recognize, however, that the defendant’s right to full and fair cross-examination, guaranteed by the Sixth Amendment, may limit the [rape-shield] statute's application when evidence of the victim’s prior sexual conduct is relevant to show bias or motive to lie.’’).