The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent,

v.

Michael Mark MURPHY,
Respondent/Cross–
Petitioner.

No. 95SC163.

Supreme Court of Colorado,
En Banc.

June 10, 1996.

Rehearing Denied July 29, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Laurie A. Booras, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner/Cross–Respondent.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for Respondent/Cross–Petitioner.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *People v. Murphy,* 899 P.2d 294 (Colo.App.1994), in which the court of appeals reversed the respondent's conviction. The court of appeals held that although evidence of a rape victim's homosexual orientation is barred by section 18–3–407, 8B C.R.S. (1986 & 1995 Supp.) ("the Rape Shield Statute"), the trial court erred in refusing to allow the defense to introduce evidence of the victim's sexual orientation because the prosecution had opened the door to such evidence. The court of appeals also held that on remand, the defense would be entitled to introduce expert testimony about the behavior of homosexual men with sexual identity conflict if the prosecution opens the door to such evidence. We affirm in part and reverse in part, and remand with directions.

## I.

The forty-two-year-old respondent, Michael Murphy, met D.Z., a twenty-six-year-old male, at a grocery store where D.Z. worked as a produce clerk. When Murphy was at the store as a customer, he and D.Z. often conversed. D.Z. and Murphy learned that they lived in the same apartment complex, and they encountered each other outside the complex on the evening of August 30, 1990. At that time, Murphy asked D.Z. if he would like to go to Murphy's apartment for a beer, and D.Z. accepted the invitation. While drinking their beers, Murphy asked D.Z. if he could take D.Z.'s measurements because Murphy had some clothes he wanted to give to D.Z. After taking his measurements, Murphy put a handcuff on D.Z.'s wrist. According to D.Z.'s testimony at trial, Murphy then perpetrated sadistic homosexual acts against D.Z. without D.Z.'s consent.

Murphy was charged with two counts of first degree sexual assault, one count of third degree assault, and one count of false imprisonment. Murphy's defense was that his encounter with D.Z. was consensual. Prior to trial Murphy filed a motion pursuant to section 18–3–407, seeking permission to cross-examine D.Z. on issues "relating to [D.Z.'s] sexual orientation" and to ask questions "pertaining to previous homosexual contacts with persons other than Murphy." The motion contained the following statement:

> Evidence of [D.Z.'s] sexual orientation, including previous homosexual acts, is relevant and material to issues to be deter-

mined at trial. The fact that [D.Z.] is of a homosexual orientation, and in fact that [D.Z.] has had previous homosexual encounters, tends to make Mr. Murphy's defense of consent more probable.

At a pretrial hearing on the motion, Murphy argued that D.Z. denied being a homosexual, that through discovery Murphy learned that D.Z. had "initiated a sexual contact between himself and a 17–year–old neighbor," and that D.Z.'s prior homosexual act and homosexual proclivity were relevant to the defense of consent under CRE 401.[1] The motion judge denied Murphy's motion, concluding that Murphy could not introduce evidence of D.Z.'s prior sexual conduct at trial. However, the motion judge determined that she would leave for the trial judge the issue of whether Murphy could introduce evidence of D.Z.'s sexual orientation at trial.

At trial, the prosecutor informed the jury in his opening statement that D.Z. had a common-law wife and a daughter. D.Z. testified to those facts and stated that his encounter with Murphy was "sick and abnormal." When the prosecutor asked D.Z. why he was not aroused by the encounter with Murphy, D.Z. responded "I'm not that kind."

Prior to cross-examining D.Z., Murphy verbally moved for permission to ask D.Z. about D.Z.'s homosexual tendencies and D.Z.'s prior sexual contact with another young man,[2] arguing that the prosecutor's opening statement and D.Z.'s testimony had opened the door to such cross-examination. The trial court denied Murphy's motion, concluding that the issue of sexual orientation was not relevant.

Murphy testified at trial that in an earlier conversation, D.Z. had indicated to Murphy that D.Z. might be homosexual. Murphy further testified that he and D.Z. had discussed Murphy's interest in "rough sex" and that D.Z. had agreed to try some bondage activities. Murphy asserted at trial that D.Z. consented to the bondage activities that occurred between them. Furthermore, Murphy denied D.Z.'s allegations that Murphy forced D.Z. to submit to other sadistic acts. Murphy also called Michael Holtby, a psychotherapist, as a defense witness. Holtby testified as an expert in psychotherapy with a specialty in homosexuality. He testified, *inter alia*, that some of his clients who are homosexuals are married and have children, and that some persons seek to deny their homosexual tendencies by denouncing homosexuals and by getting married. When Murphy sought to ask Holtby on redirect examination about persons who react tearfully after engaging in consensual homosexual acts, the trial court sustained the prosecution's objection to such a line of questioning.

A jury found Murphy not guilty of one count of first degree sexual assault and guilty of the other count of first degree sexual assault. The jury also found him guilty of third degree assault and false imprisonment. Murphy was subsequently sentenced to consecutive sentences of sixteen years imprisonment for first degree sexual assault, twenty-four months in county jail for third degree assault, and twelve months in county jail for false imprisonment.

The court of appeals reversed Murphy's conviction, holding that although the Rape Shield Statute bars evidence of a rape victim's prior sexual conduct, the trial court erred by refusing to allow Murphy to cross-examine D.Z. about his sexual orientation and to present expert testimony about the behavior of homosexual men with sexual identity conflicts who engage in homosexual contact.

## II.

The first issue before us is whether the court of appeals properly held that the Rape Shield Statute bars evidence of a rape victim's sexual orientation. The issue of the Rape Shield Statute's applicability to sexual orientation is one of first impression in Colo-

---

1. CRE 401 contains the following language:

    "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2. Murphy argued that if D.Z. "denied having homosexual proclivity" Murphy should be able to "impeach him regarding an incident between him and [another young man, K.K.] when family members found [K.K.] and [D.Z.] in bed together and there was a sexual experience."

rado. In interpreting a statute, our primary task is to give effect to the intent of the legislature. *People v. Davis,* 794 P.2d 159, 180 (Colo.1990). To discern such intent, we must look to the language of the statute according to its plain and ordinary meaning. *Id.* If the language is ambiguous, we must consider its legislative history, the state of the law prior to enactment, the problem addressed, and the statutory remedy. *Id.*

■ Colorado's Rape Shield Statute bars evidence of a rape victim's past sexual conduct:

(1) Evidence of specific instances of the victim's prior or subsequent sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall be presumed to be irrelevant except:

(a) Evidence of the victim's prior or subsequent sexual conduct with the actor;

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.

(2) In any criminal prosecution under sections 18–3–402 to 18–3–405, 18–6–301, 18–6–302, 18–6–403, and 18–6–404, or for attempt or conspiracy to commit any crime under sections 18–3–402 to 18–3–405, 18–6–302, 18–6–403, and 18–6–404, if evidence, which is not excepted under subsection (1) of this section, of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults is to be offered at trial, the following procedure shall be followed:

(a) A written motion shall be made at least thirty days prior to trial, unless later for good cause shown, to the court and to the opposing parties stating that the moving party has an offer of proof of the relevancy and materiality of evidence of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults which is proposed to be presented.

(b) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall notify the other party of such and set a hearing to be held in camera prior to trial. In such hearing, the court shall allow the questioning of the victim regarding the offer of proof made by the moving party and shall otherwise allow a full presentation of the offer of proof including, but not limited, the presentation of witnesses.

(d) An in camera hearing may be held during trial if evidence first becomes available at the time of the trial or for good cause shown.

(e) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim is relevant to a material issue to the case, the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted. The moving party may then offer evidence pursuant to the order of the court.

§ 18–3–407, 8B C.R.S. (1986 & 1995 Supp.). The Rape Shield Statute bars evidence of sexual conduct. It does not refer to evidence of "sexual orientation." Nevertheless, the court of appeals held that "[h]omosexual orientation is within the purview" of the statute. *Murphy,* 899 P.2d at 296.

■ The basic purpose of the Rape Shield Statute is to provide rape and sexual assault victims greater protection from humiliating "fishing expeditions" into their past sexual conduct, unless a showing is made that the evidence would be relevant to some issue in the case. *People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 278 (1978). Prior to the enactment of the Rape Shield Statute, it was thought that the fact a woman had consented to sexual relations with others on other occasions would justify a logical conclusion that it

was more probable that she had consented to the sexual act giving rise to the prosecution. *Id.* As critical thought and analysis were brought to bear on these issues, it became apparent that a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent. *Id.* Similarly, a rape victim's sexual orientation may have no bearing on his or her credibility or the issue of consent.

■ Evidence of past sexual conduct is closely related to evidence of sexual orientation. We therefore conclude, as did the court of appeals, that the Rape Shield Statute's prohibition against evidence of a rape victim's past sexual conduct also precludes evidence of sexual orientation. *See People v. Aldrich,* 849 P.2d 821 (Colo.App.1992) (determining that the statutory term "prior sexual conduct" includes prior sexual assaults suffered by the victim). We therefore affirm the court of appeals on this issue.

### III.

■ Next, we must determine whether the court of appeals erred in holding that the prosecution opened the door to evidence that D.Z. is homosexual.[3] The court of appeals based its holding on the fact that, at trial, the prosecution asked the victim two questions which identified the victim as having an ex-wife and a child. The court of appeals also supported its holding by characterizing certain statements D.Z. made at trial as denials of a homosexual preference. The court of appeals concluded that such testimony created the inference that D.Z. was heterosexual, thereby opening the door to rebuttal testimony by the defendant that D.Z. was homosexual. We disagree.

■ The Rape Shield Statute does not absolutely preclude the introduction of evidence regarding a rape victim's prior sexual conduct. Rather, the statute creates a presumption that evidence of prior sexual conduct is irrelevant. § 18–3–407(1), 8B C.R.S. (1986). Evidence concerning a victim's sexual conduct may be admitted where a defendant demonstrates that such evidence meets a statutory exception or that the evidence is otherwise relevant to a material issue in the case. *Id.* Thus, although the Rape Shield Statute bars evidence of a rape victim's sexual orientation and past sexual conduct, the defense may still introduce such evidence if the prosecution makes the evidence relevant by "opening the door" to the evidence.

■ The concept of "opening the door" represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression. *People v. Miller,* 890 P.2d 84, 98–99 (Colo.1995). When a party opens the door to inadmissible evidence, his opponent may then inquire into the previously barred matter. *See People v. Rollins,* 892 P.2d 866, 873 (Colo.1995) (holding that when defense counsel opened the door to evidence of an uncharged sexual assault of his client, the prosecution could then address the otherwise inadmissible issue of the uncharged sexual assault); *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo.1986) (holding that after plaintiff in an assault and battery civil trial against police testified that he had not resisted arrest, the defense could cross-examine the plaintiff about his misdemeanor conviction for resisting arrest during this encounter since the plaintiff's testimony left the jury with a misleading version of the facts); *see also People v. Sams,* 685 P.2d 157 (Colo.1984); *People v. Cole,* 654 P.2d 830 (Colo.1982); *People v. Tenorio,* 197 Colo. 137, 590 P.2d 952 (1979); *People v. Zallar,* 191 Colo. 492, 553 P.2d 756 (1976).

**3.** The respondent asserts that this court may not reinstate his conviction because the petition for certiorari questions only whether the prosecution opened the door to evidence that a male victim of sexual assault had a prior *sexual experience* with another man. The respondent argues that this issue is improperly raised because the court of appeals held that the prosecution had opened the door to evidence of the victim's *sexual orienta-*tion. We reject this argument. Pursuant to C.A.R. 53, a statement of an issue will be deemed to include every subsidiary issue clearly comprised therein. Here, the issue of sexual orientation is related to the issue of past sexual conduct, particularly because the respondent intended to prove the victim's sexual orientation by introducing evidence of the victim's past sexual conduct.

The issue raised here is whether certain testimony can be fairly characterized as meeting the threshold for "opening the door" in order to justify admitting otherwise barred evidence. A review of other cases involving sexual assaults and rape shield laws illustrates the kind of evidence that courts have found as insufficient to meet the threshold for "opening the door" to evidence of the victim's past sexual conduct. In *People v. Vialpando*, 804 P.2d 219 (Colo.App.1990), *cert. denied*, No. 90SC524 (Colo. Jan. 28, 1991), the alleged victim of sexual assault told her physician that she had no sexual relations prior to the assault. To impeach the complainant's credibility, the defense intended to elicit the name of a male with whom the complainant had sexual relations days before the alleged assault. The Colorado Court of Appeals held that based on the requirements of both CRE 403 and the Rape Shield Statute, the defendant did not establish that he was entitled to elicit the name of the male with whom the complainant allegedly engaged in sexual intercourse before the assault. *Id.* at 223.

In *State v. Camara*, 113 Wash.2d 631, 781 P.2d 483 (1989), the victim of a sexual assault stated to the defendant that the victim was not interested in having anal intercourse because he disliked it and felt it was unsafe. The Washington Supreme Court held that this implied denial of past sexual conduct did not open the door to evidence of the scope or nature of the victim's past experiences with anal intercourse. *Id.* 781 P.2d at 488. The Washington Supreme Court found that to hold such a statement as sufficient to "open the door" would have unnecessarily weakened the statutory shield protecting victims from disclosures of their prior sexual conduct. *Id.* at 489.

In the case before us, we hold that the court of appeals erroneously found that the prosecution opened the door to the defense's evidence of D.Z.'s sexual orientation and past sexual conduct. First, the testimony on which the court of appeals relied for its holding was not sufficient to allow the defense to introduce evidence of the victim's sexual orientation or past sexual conduct. Second, the defense made an insufficient offer of proof and thus did not meet the requirements of the Rape Shield Statute.

## A.

Murphy acknowledges that D.Z. did not explicitly testify that he was heterosexual. Nevertheless, Murphy contends that D.Z. created an inference that he was heterosexual when he testified that he had been married and had a child. Murphy thus argues that he should have been allowed to rebut the inference of D.Z.'s heterosexuality. We reject Murphy's argument because the record reflects that he was allowed to rebut any inference of heterosexuality created by this testimony, despite the trial court's refusal to admit evidence of D.Z.'s sexual orientation as shown by his past sexual conduct.

At trial, Murphy's expert witness, a psychotherapist, rebutted any inference that a person who has been married is necessarily heterosexual by testifying that it is not uncommon for homosexuals to be married and have children. The psychotherapist also testified that some homosexual men experience conflict about their homosexuality and deny the homosexuality by marrying women. Thus, Murphy was permitted to rebut any assumption that a married man could not be homosexual, and did so without having to introduce evidence of D.Z.'s sexual orientation or past sexual conduct. *See People v. Arenda*, 416 Mich. 1, 330 N.W.2d 814 (1984) (permitting defendant to establish that child victim might have basis for sexual knowledge from sources such as books or movies to explain the victim's ability to describe the charged sexual act, rather than violating rape shield statute by allowing defendant to introduce evidence of the child's sexual activities with others).

Murphy also asserts that certain testimony by D.Z. created an inference that D.Z. was not interested in homosexual activities. We disagree because in context, D.Z.'s statements indicate that D.Z. did not necessarily object to the homosexual acts but rather objected to the sadistic sexual acts. For example, D.Z. testified at trial that when he was handcuffed and seated on a wooden restraining board, he told Murphy that he was "not into whatever it is." In context, this

statement did not necessarily imply that D.Z. was heterosexual; rather, the statement indicated that D.Z. did not consent to the sadistic sexual acts in which Murphy engaged. Additionally, when D.Z. testified that he believed Murphy was "a sick bastard," this characterization did not necessarily refer to Murphy's sexual orientation but instead referred to Murphy's proclivity to engage in sadistic sexual acts. Finally, D.Z. testified that when Murphy was fondling D.Z.'s penis, D.Z. stated that he was "not that kind." Although this statement may be understood to imply that D.Z. was heterosexual, the statement in the context of D.Z.'s entire testimony could also be understood to mean that D.Z. was not a masochist. These statements D.Z. made did not necessarily suggest that he was heterosexual; they instead indicated that D.Z. objected to Murphy's sadistic sexual assault. Simple protests to being sexually assaulted cannot be sufficient to open the door to a victim's prior sexual conduct or sexual preferences. We therefore find that the prosecution did not open the door to evidence of D.Z.'s sexual orientation or past sexual conduct through the introduction of these statements.

### B.

■ Additionally, the defense made an insufficient offer of proof and thus did not meet the requirements of the Rape Shield Statute. As rebuttal evidence, Murphy wished to introduce evidence of D.Z.'s sexual orientation and past sexual conduct, asserting that such evidence was relevant to Murphy's defense that D.Z. consented to the sexual acts at issue. Specifically, Murphy wished to introduce evidence regarding an incident between D.Z. and another young man. According to the proffered testimony, D.Z. and the young man had been seen in bed together, although it was unclear as to what the two were doing in bed.

The Rape Shield Statute provides that a party seeking to introduce evidence of a victim's past sexual conduct must file a written motion "stating that the moving party has an offer of proof of the relevancy and materiality of evidence of *specific instances* of the victim's prior or subsequent sexual conduct."

§ 18–3–407(2)(a), 8B C.R.S. (1986) (emphasis added). The statute further states that it is within the province of the trial court to determine the sufficiency of the offer of proof. § 18–3–407(2)(c), 8B C.R.S. (1986).

Murphy states that his desire to question D.Z. about his sexual proclivities is based upon a substantial offer of proof. We find, however, that the record reveals otherwise. Murphy's rebuttal evidence was not based upon a substantial offer of proof because the evidence did not relate a specific instance of homosexual conduct between D.Z. and the young man. Rather, the testimony related an incident between D.Z. and a young man which merely hinted at homosexual activity. In ruling that Murphy's proposed evidence was inadmissible, the trial court found that the evidence was speculative and did not actually show that D.Z. was homosexual. Because Murphy had no evidence of any specific homosexual activity by D.Z., his offer of proof as to D.Z.'s sexual orientation was insubstantial and did not meet the requirements of the Rape Shield Statute. *Accord People v. Erickson,* 883 P.2d 511 (Colo.App. 1994) (holding that the trial court correctly refused to allow the defendant to question a witness about the victim's bisexual nature because the witness' opinion was based upon pure rumor of unknown declarants and was not substantiated by reliable proof). We therefore conclude that the trial court properly determined that Murphy's offer of proof regarding D.Z.'s sexual orientation and past sexual conduct was insufficient.

### IV.

As discussed above, we affirm the court of appeals in its holding that the Colorado Rape Shield Statute's bar against evidence of a rape victim's past sexual conduct includes evidence of sexual orientation. However, we reverse the court of appeals in its holding that the prosecution in the current case opened the door to evidence of the victim's sexual orientation. We instead find that the trial court properly determined that the door was not opened to evidence of the victim's sexual orientation as shown by his past sexual conduct. We therefore affirm in part and reverse in part, and remand to reinstate the

judgment of conviction entered against the respondent.[4]

4. Because we affirm the judgment of the trial court, we need not reach the issue of whether, on remand, the defense would be entitled to introduce expert testimony on homosexual identity conflict to explain the victim's tearful conduct after the incident, if the prosecution presents evidence that the victim's behavior was consistent with one who had been the victim of a sexual assault.