23CA0572 Peo v MacDonald 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0572
Jefferson County District Court No. 22CR1137
Honorable Phillip J. McNulty, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sean Patrick MacDonald,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General,
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Sean Patrick MacDonald, appeals the judgment of conviction entered upon jury verdicts finding him guilty of felony menacing with a deadly weapon and misdemeanor prohibited use of a weapon.  He contends that the district court reversibly erred by allowing the prosecution to admit inadmissible evidence.  We disagree and therefore affirm.

## I.     Background

¶ 2     The State charged MacDonald with second degree assault, felony menacing, third degree assault, prohibited use of a weapon, and obstructing a peace officer.  It was alleged that, on the night in question, MacDonald assaulted his girlfriend (victim) and pointed a gun at her, and that MacDonald did not comply with officers' commands when they attempted to take him into custody at his home.  Before trial, the prosecution stated that it was not going to introduce any CRE 404(b) other act evidence.

¶ 3     At trial, the victim testified regarding MacDonald's alleged assault and use of a weapon during the altercation.  And, as relevant to this appeal, the prosecution presented officers' testimonies and body camera footage to establish the following events surrounding MacDonald's arrest.

1

¶ 4       Several hours after the victim reported the altercation to police, approximately ten officers surrounded MacDonald's home and used a bullhorn to order him to exit the residence. The police had not spoken to MacDonald before this point because his cellphone was broken and he did not have a landline. During this time, the officers noted that MacDonald's vehicle, which was parked in front of the house, had been remotely turned on and then turned off.

¶ 5       MacDonald eventually exited the house with his hands up, but he was wearing body armor that had guns and knives strapped to it. MacDonald did not comply with officers' commands to keep his hands up or to lay down on the ground. Due to safety concerns, the officers fired less lethal rounds at MacDonald. He finally dropped to the ground and was taken into custody.

¶ 6       Agent Cook, one of the responding police officers, testified that this elevated tactical response was necessary because the victim reported that MacDonald had used a weapon during the altercation that occurred earlier in the evening (reported weapon use). During an ensuing bench conference, defense counsel expressed concern that the agent would say that the elevated tactical response was

2

based on, among other things, prior incidents that had occurred between officers and MacDonald at his home (prior incidents). She argued that this would constitute inadmissible CRE 404(b) evidence. The prosecutor confirmed that she instructed the agent not to discuss the prior incidents and that the agent would testify only as to the reported weapon use. In front of the jury, Agent Cook explained the nature of the tactical response without referencing the prior incidents.

¶ 7    During Agent Cook's cross-examination, defense counsel confirmed that the police "responded in the way that [they] did based on the [victim's] allegation that there were weapons" and that the police had not spoken to, or conducted any investigation directly with, MacDonald. Counsel then had the following exchange with Agent Cook:

> Q Okay. So just to be clear, nobody walked up to Mr. MacDonald's house and knocked on his door and asked him what happened, right?
>
> A No, ma'am.
>
> Q Okay. So the plan right away was to surround the house in what you described as a tactical manner, correct?

A Correct.  This is what we would consider a surrounding callout.

¶ 8       During redirect examination, the prosecutor asked Agent Cook, "why not just come up to [MacDonald's] door, knock on it, and ask him what happened?"  Before the witness could answer, the district court asked the parties to approach for a bench conference, at which the prosecutors reconfirmed that the agent was instructed not to talk about the prior incidents and that he would testify that approaching the home would have been dangerous because of the reported weapon use.

¶ 9       But defense counsel nevertheless objected, arguing that the prosecutor was asking "a disingenuous question . . . [b]ecause why [the officers] didn't approach him was because of th[e] previous contacts" and that this answer would constitute inadmissible CRE 404(b) evidence.  The prosecutor countered that the defense had implied throughout the trial that the officers did not do enough to contact MacDonald before employing the elevated tactical response and that the prosecution should be permitted to elicit why the officers took, or declined to take, certain steps to arrest MacDonald.  The prosecutor further asserted that defense counsel's cross-

examination regarding the officers' decision not to walk up to MacDonald's residence and speak with him opened the door to the admission of evidence of the prior incidents.

¶ 10　　The district court agreed that defense counsel had opened the door to the admission of the prior incidents evidence because

> [b]ased on the entire cross-examination, this jury is left with the impression that every case the Lakewood Police Department goes to a call on, where a weapon is involved, they call out this tactical unit, surround the neighborhood, use a bullhorn, force somebody to come out, drop to their knees under threat of being shot. And this jury has no idea what's really going on. And the defense exploited that through cross-examination.

The court denied defense counsel's request for the court to evaluate the admissibility of the prior incidents evidence and asked the parties to comment on what evidence should be admitted. The court decided that, "to give a fair impression" of the situation, the prosecutor would be allowed to ask a leading question intended to elicit a single, general statement that the police did not knock on MacDonald's door because they "had experience with prior calls to this residence."

¶ 11 In front of the jury, the prosecutor asked Agent Cook if the officers "[d]id . . . not go up and just knock on the door and ask Mr. MacDonald what had happened because Lakewood Police Department had experience with prior calls to this residence?" Agent Cook responded, "Yes."

¶ 12 The jury found MacDonald guilty of felony menacing and prohibited use of a weapon and acquitted him of the remaining charges. The district court sentenced him to a controlling term of two years in the custody of the Department of Corrections.

## II. Legal Authority and Standard of Review

¶ 13 CRE 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Such evidence is "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(2).

¶ 14 In order to present CRE 404(b) evidence, the prosecution must comply with certain notice requirements. CRE 404(b)(3). Also, when determining whether evidence is admissible under CRE

6

404(b), a court must apply the four-part test set forth in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). *See People v. Owens*, 2024 CO 10, ¶ 110.

¶ 15    The doctrine of "opening the door" is not codified in the rules of evidence but is instead a court-promulgated curative measure. *People v. Melillo*, 25 P.3d 769, 775 (Colo. 2001). The doctrine allows for the admission of otherwise inadmissible evidence when such evidence is necessary to prevent one party from gaining and maintaining an unfair advantage through the selective presentation of evidence that, without being elaborated or placed in context, creates an incorrect or misleading impression. *Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008); *Melillo*, 25 P.3d at 775; *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996).

¶ 16    But the opening the door doctrine is not unlimited. *People v. Cohen*, 2019 COA 38, ¶ 23. The opposing party may introduce otherwise inadmissible evidence only to the extent necessary to rebut any adverse inferences which might have resulted or to correct an incorrect or misleading impression. *Id.* at ¶ 26.

¶ 17    We review for an abuse of discretion a trial court's evidentiary rulings, *see Campbell v. People*, 2019 CO 66, ¶ 21, and a court's

determination of whether a party opened the door to otherwise inadmissible evidence, *see People v. Johnson*, 2021 CO 35, ¶ 16. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

¶ 18     Where, as here, a defendant objects to the admission of evidence, we review any error in the admission of such evidence for nonconstitutional harmless error. *Pernell v. People*, 2018 CO 13, ¶ 22. "Under th[is] . . . standard, an erroneous evidentiary ruling does not require reversal unless the ruling affects the accused's substantial rights," *Nicholls v. People*, 2017 CO 71, ¶ 17, or there is "a reasonable probability that the court's error contributed to [the defendant's] conviction." *People v. Short*, 2018 COA 47, ¶ 54. "Thus, we will reverse only if the error substantially influenced the verdict or impaired the fairness of the trial." *Campbell*, ¶ 22. But "[i]f a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless." *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989).

## III.    Analysis

¶ 19    MacDonald first asserts that the district court erred by admitting the prior incidents evidence without evaluating whether the evidence was admissible under the rules of evidence and the *Spoto* test.  We disagree.

¶ 20    The district court did not admit the prior incidents evidence pursuant to the rules of evidence.  The court instead found that the prior incidents evidence was admissible pursuant to the opening the door doctrine.  As noted above, this doctrine is a judicially created curative measure that falls outside the rules of evidence and that provides for the admission of evidence that is *otherwise inadmissible.*  If evidence sought to be introduced pursuant to the doctrine was required to be admissible under the rules of evidence, as MacDonald suggests, the doctrine would be rendered meaningless.

¶ 21    Thus, because the district court found that the prior incidents evidence was admissible pursuant to the opening the door doctrine, the court did not need to address whether it was admissible under the rules of evidence.  *See Murphy*, 919 P.2d at 195 ("When a party opens the door to inadmissible evidence, [its] opponent may then

inquire into the previously barred matter."); *see also People v. Rollins*, 892 P.2d 866, 873 (Colo. 1995) ("The trial court was not required to issue a limiting instruction or comply with the procedural requirements of . . . CRE 404(b) . . . because defense counsel first introduced, and opened the door to admitting, the [inadmissible evidence] as part of the theory of defense.").

¶ 22　MacDonald next contends that the district court reversibly erred by finding that defense counsel had opened the door to allow for the admission of Agent Cook's otherwise inadmissible testimony that the officers did not "go up and just knock on the door and ask Mr. MacDonald what had happened because Lakewood Police Department had experience with prior calls to this residence." Again, we disagree.

¶ 23　The record reflects that the prosecution was content with presenting evidence demonstrating that the elevated tactical response was based on the reported weapon use.  Indeed, at the bench conference during the redirect examination of Agent Cook, the prosecutor confirmed that, in order to elaborate on defense counsel's question about the officers not walking up to the door and talking to MacDonald, she intended to elicit testimony from Agent

Cook that the decision not to do so was based on the reported weapon use. It was defense counsel who argued that the prosecutor's question and intended response were "disingenuous" because the prior incidents were the actual basis for the officers' decision to not walk up to MacDonald's door.

¶ 24    We conclude that the district court did not abuse its discretion by finding that defense counsel's cross-examination opened the door for the prosecution to present evidence to elaborate on the incorrect or misleading impression regarding the reasonableness of the officers' decision not to approach MacDonald before employing the elevated tactical response. *See People v. Palacios*, 2018 COA 6M, ¶ 18 ("In assessing whether a trial court's decision is arbitrary, unreasonable, or unfair, we look to whether the trial court's decision fell within a range of reasonable options. Thus, a trial court abuses its discretion only when its decision exceeds the bounds of the rationally available choices.") (citation omitted). And, as is required by the opening the door doctrine, the court properly limited the prior incidents evidence to a single, nonspecific reference to the officers' "experience with prior calls to this residence." *See Cohen*, ¶ 23.

¶ 25    Nevertheless, we also conclude that, even if error, the admission of the prior incidents evidence was harmless.

¶ 26    First, the admitted prior incidents evidence was limited to an affirmative response to a single, leading, nonspecific question, and the evidence not was not thereafter referenced during the trial or closing argument.  *See People v. Martinez*, 2020 COA 141, ¶ 43 (holding the erroneous admission of evidence was harmless because it "constituted a minor portion of [the defendant's] trial" and "the prosecutor did not refer to or repeat this testimony at any other point of the trial, including during her opening statement and closing argument.").  Indeed, even after the admission of the prior incidents evidence, the prosecutor sought to elicit testimony from a detective who identified the reported weapon use as the basis for the elevated tactical response.  At an ensuing bench conference to discuss the substance of the detective's testimony on this issue, the prosecutor confirmed that she was not eliciting any more testimony as to "why [the officers] responded that way in terms of past context" because "I think we already got that out and that suffices."

¶ 27    Moreover, the jury's acquittal of MacDonald of the most serious assault charges and of the charge being addressed when the

12

prior incident evidence was admitted (obstructing a peace officer) demonstrates that, notwithstanding the prior incident evidence, the jury was able to properly weigh and evaluate the admissible evidence and the charges. *See Martin v. People*, 738 P.2d 789, 795-96 (Colo. 1987) (A split verdict "is an indication that the jurors exercised some discretion in their deliberations and did not blindly convict the defendant based upon inferences drawn from" improper evidence.).

¶ 28    Lastly, we are convinced that the evidence presented to prove the offenses of which MacDonald was convicted was strong. *See Short*, ¶ 59 (error in the admission of evidence was harmless where the case against the defendant was strong). Specifically, the evidence presented at trial showed that, on the night in question, MacDonald was intoxicated, he was in possession of a gun, and he pointed the gun at the victim. *See* § 18-3-206, C.R.S. 2024 (A person commits felony menacing "if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury . . . by the use of a firearm."); § 18-12-106(1)(d), C.R.S. 2024 (As relevant here, a person commits prohibited use of a weapon if "[t]he person has in

13

his or her possession a firearm while the person is under the influence of intoxicating liquor or of a controlled substance.").

## IV. Disposition

¶ 29    The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.