24CA1870 Peo v Webb 04-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1870
Boulder County District Court No. 23CR2108
Honorable Nancy W. Salomone, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Aaron Oswald Webb,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Lipinsky and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

---

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Ridley, McGreevy & Winocur, P.C., Robert T. Fishman, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Aaron Oswald Webb, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child under fifteen years of age by one in a position of trust as part of a pattern of abuse and an aggravated sex offense sentence enhancer. We affirm.

I.    Background

¶ 2    The jury heard evidence that would support the following findings. Webb sexually assaulted G.B., his stepdaughter, approximately twenty times when she was between seven and ten years old.

¶ 3    G.B. testified at trial. Webb did not. Part of Webb's defense centered on attacking the actions of two witnesses. He argued that David Nichols — G.B.'s therapist and the first person to whom G.B. disclosed Webb's sexual abuse — improperly and suggestively pressured her disclosure while discussing with G.B. a letter she had written that referred to Webb "touching" her. Webb also argued that G.B.'s dialogue with Susana Avelar, a forensic interviewer, was not "neutral."

¶ 4    The jury convicted Webb of sexual assault on a child under fifteen years of age by one in a position of trust as part of a pattern

1

of abuse and an aggravated sex offense sentence enhancer. The trial court sentenced Webb to an indeterminate term of twelve years to life in the custody of the Department of Corrections.

## II.     Cross-Examination

¶ 5      Webb contends that the trial court violated his right to present a complete defense by imposing limitations on his cross-examination of Nichols and Avelar. We discern no error.

## A.     Additional Background

¶ 6      The prosecution filed a notice of its intent to introduce evidence at trial under CRE 404(b) and section 16-10-301, C.R.S. 2025, that Webb repeatedly sexually assaulted his younger sister decades before, beginning when he was six years old and his sister was three years old. According to the prosecution, there were factual similarities between Webb's sexual conduct involving his sister and G.B.'s allegations. The prosecution asserted that the evidence of Webb's sexual assault of his sister was admissible because, among other reasons, it (1) went directly to Webb's intent when he sexually assaulted G.B.; (2) established that Webb's conduct did not result from a mistake or misunderstanding; and

(3) rebutted the anticipated defense argument that G.B. was not credible or made up her story.

¶ 7    Webb objected, arguing that the prior acts were not relevant, involved an improper propensity inference, and did not survive a CRE 403 analysis.

¶ 8    After additional argument, the trial court granted the People's request in part. It explained that it was concerned with the amount of time that had passed but noted that Webb would open the door to the evidence at trial if Webb, "on [v]oir [d]ire, [o]pening [s]tatement[,] or examination of any witness[,] challenges the credibility of G.B." The court ruled that, should such a credibility challenge be asserted, it would admit the evidence as relevant to Webb's motive, opportunity, and intent.

¶ 9    Webb requested that the court reconsider its ruling. In the meantime, a different district court judge had taken over the case. At a hearing, the new judge noted with concern that the original order did not include any CRE 404(b) findings. And the new judge expressed additional unease with the breadth of the language warning that a challenge to G.B.'s credibility would open the door.

The court then essentially abrogated the original order, saying, "I regard this as being, essentially, a fresh question for this Court."

¶ 10    The court conducted a CRE 404(b) analysis and found that while the first two prongs under *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990), were met, prongs three and four — the requirements that the evidence's logical relevance be independent of an impermissible propensity inference and the risk of unfair prejudice not substantially outweigh the evidence's probative value — were not.  The court also clarified the original ruling, saying that "attacking the credibility" of G.B. would not mean simply mounting a defense that the accusation was false or fabricated.  Rather, the court explained, it would mean asserting that G.B. made up the allegations because of the family dynamic (which allegedly involved G.B.'s dissatisfaction with Webb during the dissolution of Webb's marriage to her mother).  The court noted that it would revisit its ruling depending on whether defense counsel opened the door to the admission of the prior act evidence at trial.

¶ 11    At trial, the prosecutor argued that defense counsel opened the door to the CRE 404(b) evidence during opening statement by

arguing that Nichols planted the abuse allegations and that Avelar pressured G.B. to disclose the abuse; thus, the CRE 404(b) evidence was admissible to rebut the defense's implanted memory and fabrication claims. The court found that while the reasons the prosecutor gave for admission of this evidence were appropriate, the evidence did not survive CRE 403 balancing. The court stated,

> The Court acknowledges that since the ruling on Thursday, there has become, in my mind, a clearer piece of logical relevance, and that I'm naming as the suggestion that [G.B.] either purposely fabricated, or the suggestion that the therapist has implanted a memory that she now believes is true. That is independent of an intermediate inference, which is the propensity one that the Court remains concerned about.
>
> So what is left now is prong four. The Court feels that at this stage of the evidence, the weight of prejudice is substantially larger than the weight of the probative value for the permissible purpose. But [defense counsel] is again cautioned that the Court would review the weight, and that the weight changes the more the defense affirmatively posits one of those two things, that is the — that this evidence would be permissive to rebut.

¶ 12     Later, during a bench conference prior to defense counsel's cross-examination of Avelar, defense counsel stated,

> So I've never intended to argue that a memory has been implanted. But I understand that

5

there are things I can say that will cause [the prosecutor] to argue that I've done that anyway. So I just wanted to say, my intent now, with this witness, is to basically use this witness to confirm that the original interview, as described with Nichols, did not follow her forensic interviewing policies and techniques; that he did things that she would not have done. I think that's a valid area of cross-examination, but if [the prosecutor] is going to then argue that I'm inferring, that that's implanting a memory, and you're going to allow his sister to come testify, I'll have no cross.

The parties argued about whether the door was opened in the following exchange:

> [DEFENSE COUNSEL]: And I think that this is just sufficiency of the evidence, thoroughness of the process, not following procedures. If they're allowed to say these are the procedures that should be followed by the expert, I feel like I should be able to say, and they weren't followed in the first interview. And I don't think that opens the door to implanting a memory. I'm just saying he didn't follow the procedures . . . I just — I want to bring it up before I do it so I know how to advise my client and how to move forward.
>
> THE COURT: [W]hile I entirely understand your intention and bringing the issue to the Court, I think we're perilously close to a place where I'm giving you an advisory opinion . . . and I'm not going to do that. [The prosecutor] has already indicated that she thinks that the door is already open. I've indicated that what

is remaining for the Court to do in the *Spoto* analysis is weigh prejudice versus probative value, and I don't think it's properly my role to indicate to you what precisely every question weighs.

[DEFENSE COUNSEL]: I understand that.  My client's facing 18 to life.  If I ask a question that changes the Court's ruling, he's going to spend years in prison while they appeal my effectiveness.  And so I'm trying to be as careful and as transparent as I can about what I'm trying to argue versus what [the prosecutor] thinks I'm arguing, because I don't believe I've even got my toes in the door.  But that — that's where I'm standing.  And I guess I'm understanding the Court to say proceed at your peril?

The court agreed, noting, again, that it did not want to give an advisory opinion.  Defense counsel did not cross-examine Avelar.

¶ 13     Defense counsel also did not cross-examine Nichols because of "the pending threat of 404(b) coming in, if [counsel] were to say anything that [the prosecutor] believe[d] g[ot] [them] through that door," among other reasons.

## B.   Analysis

¶ 14     Throughout his appellate briefing, Webb refers to the court's comments as a "ruling."  He argues that this "ruling" forced him to

7

abandon his constitutional rights to cross-examine his accusers and present a complete defense.

¶ 15    In support of his claim, he cites *People v. Johnson*, 2021 CO 35.  In *Johnson,* the defendant sought to introduce evidence that an alternate suspect had tested positive for gunshot residue.  The district court ruled that if the defense offered that evidence, it would open the door to evidence of Johnson's positive gunshot residue test, which the court had previously suppressed as the fruit of an unlawful search.  *Johnson,* ¶¶ 4, 13.  The Colorado Supreme Court held that the district court's ruling improperly interfered with the defendant's right to present a complete defense.  *Id.* at ¶ 33.

¶ 16    This case differs from *Johnson* in one significant — and dispositive — detail.  Unlike in that case, the trial court did not issue a definitive ruling.  Indeed, the court expressly disavowed making any such ruling, saying that it would not issue an advisory opinion.  It simply reiterated that defense counsel's inquiries on cross-examination *might* open the door — a warning that defense counsel characterized as nothing more than "proceed at your peril."

¶ 17    Counsel did not press the court for a definitive ruling.  *See* CRE 103(a)(2) (addressing rulings on evidence and noting that

8

"[*o*]*nce the court makes a definitive ruling* on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal" (emphasis added)). In the absence of a definitive ruling, we have nothing to review for error. And, perhaps more importantly, it cannot be said that the trial court *prevented* Webb from presenting evidence or asking questions at all — let alone did so to such a degree as to prevent Webb from putting on a complete defense. Consequently, we cannot identify any error, let alone reversible error, related to Webb's decision not to cross-examine the prosecution's witnesses.

## III. Rape Shield Statute

¶ 18 Next, Webb contends that the trial court erred by prohibiting him from introducing evidence of G.B.'s sexual history because the prosecution opened the door to such evidence. We discern no error.

## A. Additional Background

¶ 19 Prior to trial, Webb filed a notice under Colorado's rape shield statute, § 18-3-407, C.R.S. 2025, advising the People and the court that he intended to introduce evidence of G.B.'s prior sexual assault

outcry involving her ex-boyfriend, which Webb claimed was a false report. After a hearing, the court denied Webb's request.

¶ 20 At trial, Webb challenged the credibility of G.B.'s allegations against him by having her admit that she had many opportunities to disclose her allegations against him to her various therapists but never did. The following exchange between the prosecutor and G.B. occurred on redirect examination:

> Prosecutor: Okay. Fair to say, part of why you were in both of those [therapeutic] programs was related to some substance use?
>
> G.B.: Yes.
>
> . . . .
>
> Prosecutor: So that entire time that you were in treatment, were you working on some of those sobriety issues and those pieces initially?
>
> G.B.: Yes.
>
> Prosecutor: Okay. While you were working on those pieces, did anybody have concerns or was anybody trying to get you to talk about trauma or what had happened prior, or were you just focused on the substance use at first?
>
> G.B.: It was mostly focused on the substance use. I think two sessions of my, like, 12 or 13 in [my therapeutic programs], we talked more about like trauma and stuff.

> Prosecutor: Okay. And you were asked questions about whether you had talked to anybody before [Nichols] about [Webb]'s sexual abuse, and I think you said you did not; is that right?
>
> G.B.: Correct.
>
> Prosecutor: Okay. Why didn't you talk to anybody earlier?
>
> G.B.: I didn't feel like it was a topic to be spoke about.
>
> Prosecutor: Okay. Why didn't you feel like it was a topic to be spoke about?
>
> G.B.: I preferred talking about other things.

In response to this line of questioning, Webb sought to introduce evidence that G.B. had reported sexual abuse by her ex-boyfriend to Nichols. Specifically, defense counsel argued,

> [I]n terms of credibility, she just said she didn't disclose any trauma in those sessions because she didn't want to talk about it. But she did disclose trauma of the exact same type in those sessions. So I think it undermines her credibility, and it's a crucial area of cross-examination that I think the door has been opened to.

The court did not let defense counsel cross-examine G.B. on this issue.

## B. Standard of Review and Applicable Law

¶ 21    We review the trial court's determination of admissibility of evidence under the rape shield statute for an abuse of discretion. *People v. Osorio-Bahena*, 2013 COA 55, ¶ 21. A trial court abuses its discretion if its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 22    The rape shield statute generally precludes the admission of evidence of a victim's sexual history unless the proponent can show that the evidence is relevant to a material issue in the case. § 18-3-407(2)(e). This prohibition includes evidence of the victim's prior sexual assault reports. *People v. Weiss*, 133 P.3d 1180, 1185 (Colo. 2006). In particular, such evidence is generally inadmissible for purposes of attacking the credibility of a victim as a witness. *People v. Wallen*, 996 P.2d 182, 186 (Colo. App. 1999). But evidence of a victim's prior sexual conduct may nevertheless be admissible "if the prosecution makes the evidence relevant by

'opening the door' to the evidence." *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996).[1]

¶ 23    The doctrine of "opening the door" allows a trial court to admit otherwise inadmissible evidence when such evidence is necessary to prevent the other party from gaining an unfair advantage through the presentation of "evidence that, without being placed in context, creates an incorrect or misleading impression." *People v. Melillo*, 25 P.3d 769, 775 (Colo. 2001).  It is possible for a victim to open the door to evidence of that individual's sexual history that would otherwise be inadmissible.  *Id.* ("[T]he concept of 'opening the door' may provide a proper basis for . . . overcoming the presumption of irrelevance created by the rape shield statute.").  If the defense believes the door has been opened, it must make an offer of proof that meets the requirements of the rape shield statute.  *Id.* (citing *Murphy*, 919 P.2d at 195-99).

---

[1] There are additional exceptions to rape shield inadmissibility, but Webb does not assert that any such exception — other than the opening-the-door doctrine — applies here.

## C.    Analysis

¶ 24    We are not persuaded that G.B.'s testimony opened any door or that Webb's trial counsel made a sufficient offer of proof.

¶ 25    G.B. testified that she talked about trauma during two sessions of her therapeutic programs.  She also testified that she did not disclose Webb's sexual abuse at any point in these sessions because she did not think it was a topic to be spoken about.  Trial defense counsel argued that this latter statement opened the door to questioning G.B. regarding the other sexual abuse involving her ex-boyfriend.

¶ 26    G.B. did not broadly assert that she believed sexual assault was not a subject to be talked about.  Rather, she answered the prosecutor's question, which specifically asked her why she had not told anyone "about [Webb]'s sexual abuse" before she disclosed it to Nichols.  When viewed in context, therefore, G.B.'s statement that it was not a topic to be spoken about is most reasonably understood as a response to the prosecutor's questions asking about *Webb's* sexual abuse.

¶ 27    Moreover, as noted, Webb's trial counsel's offer of proof was that G.B. had testified that "she didn't disclose any trauma in those

14

sessions because she didn't want to talk about it. But she did disclose trauma of the exact same type in those sessions." This offer of proof was insufficient for two reasons. First, counsel misstated that G.B. testified that she did not disclose any (sexual) trauma *in her sessions with Nichols.* Again, the question to which she responded asked why she had not disclosed the trauma *before* speaking with Nichols. Second, it is inaccurate to say the two circumstances involved "the exact same type" of abuse; one involved intrafamilial sexual abuse by a stepfather and the other involved sexual abuse by a then boyfriend.

¶ 28     In sum, G.B. did not testify that all sexual abuse was a topic not to be spoken about. Nor did her testimony create an incorrect or misleading impression that she did not disclose any other sexual abuse in these therapy sessions. Therefore, her testimony did not open the door to evidence of her sexual history. *See Murphy*, 919 P.2d at 192-93 (concluding that the door was not opened to the proffered evidence about the victim's sexual history).

¶ 29     Because G.B.'s testimony did not open the door to the evidence barred by the rape shield statute, the trial court did not

abuse its discretion by prohibiting Webb's inquiry into her other abuse disclosure.

## IV.  Child Hearsay — Forensic Interview

¶ 30    Finally, Webb contends that the trial court erred by allowing Avelar to testify about statements G.B. made during the forensic interview.  We again discern no error.

### A.    Applicable Law and Standard of Review

¶ 31    A trial court may admit a child witness's out-of-court statements about sexual assault if it finds that "the time, content, and circumstances" of the child's statements provide "sufficient safeguards of reliability."  § 13-25-129(5)(a), C.R.S. 2025.  In *People v. District Court*, 776 P.2d 1083, 1089-90 (Colo. 1989), the supreme court identified a variety of factors that are "helpful" in determining reliability:

> (1) Whether the statement was made spontaneously;
>
> (2) whether the statement was made while the child was still upset or in pain from the alleged abuse;
>
> (3) whether the language of the statement was likely to have been used by a child the age of the declarant;

(4) whether the allegation was made in response to a leading question;

(5) whether either the child or the hearsay witness had any bias against the defendant or any motive for lying;

(6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement;

(7) whether more than one person heard the statement; and

(8) the general character of the child.

However, the court specifically noted that these factors are neither "mandatory standards" nor "an immutable set of standards for the trial court in determining that the rather amorphous standard of 'sufficient indicia of reliability' has been met." *Id.* at 1090.

¶ 32    We review a trial court's decision to admit child hearsay for an abuse of discretion. *People v. Phillips*, 2012 COA 176, ¶ 91. "We will uphold a court's decision to admit a child hearsay statement, 'if the record shows an adequate factual basis to support its decision.'" *People v. Thompson*, 2017 COA 56, ¶ 146 (quoting *Phillips*, ¶ 91).

B.    Analysis

¶ 33    The trial court considered the relevant factors when evaluating the reliability of G.B.'s statements to Avelar.  The trial court found

17

that Avelar was trained to conduct the interview without suggesting responses; G.B. acknowledged at the beginning of the interview that she understood what telling the truth meant; the interview technique favored creating reliable statements; G.B. used age-appropriate language for a sixteen-year-old; G.B.'s demeanor and nonverbal communication suggested that she made the statements while still upset or in pain from the abuse; and the interview would be useful to the jury in determining G.B.'s credibility because Webb had indicated his intention to assert a fabrication defense. The court also found that while the statements were not made spontaneously because G.B. knew the subject of the interview in advance, they were nevertheless spontaneous versions of the events as relayed by her.

¶ 34 Webb contends that the court did not consider a number of factors that weighed in favor of exclusion. But this argument merely urges us to make different factual findings than the trial court. That is not our role when reviewing for an abuse of discretion. The factual record supports the trial court's findings. Indeed, the court noted that the factors weighed in both directions. Thus, notwithstanding the lack of spontaneity of G.B.'s statements

to Avelar, there is sufficient factual support for the trial court's decision to admit them.

¶ 35     We further reject Webb's contention that the decisive factor in the court's conclusion was Webb's opportunity to cross-examine Avelar.  The court noted that the defense had the ability to cross-examine "each of the parts of the statements" but coupled this observation with a reference to "the nature of the interview."  The court went on to discuss the likelihood of a claim of recent fabrication or modification of the allegations and how important it might be to a jury "to understand the way in which a story has either maintained or not maintained consistency since the time it was originally reported."  Thus, we see nothing in the court's language suggesting that the ability to cross-examine was the determining factor.  And, as noted, defense counsel chose not to cross-examine Avelar.[2]

## V.     Disposition

¶ 36     The judgment is affirmed.

---

[2] Because Webb has not established that any error occurred, his cumulative error claim fails.  *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 (cumulative error requires multiple errors).

JUDGE LIPINSKY and JUDGE BERGER concur.